UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SAM STATHIS** and **CELEBRITY FARMS, LLC,** | |
| Plaintiffs, | Civil Action No.: |
| -against- | |
| **UNITED STATES TROTTING ASSOCIATION,** | **VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT** |
| Defendant, and | |
| **LEXINGTON SELECTED YEARLING SALES CO.**, (as a Necessary and Indispensable Party) | |

Plaintiffs Sam Stathis ("Stathis") and Celebrity Farms, LLC ("Celebrity Farms"), through their undersigned counsel, hereby state as follows by way of Complaint for declaratory judgment against defendant United States Trotting Association ("USTA"):

## NATURE OF THE ACTION

1.  The gravamen of the Complaint is the USTA's failure and/or refusal to declare a race horse eligible to race while a concurrent fully-bonded appeal is pending concerning the sale of the horse in the matter captioned <u>Lexington Selected Yearling Sales, Co., LLC v. Sam Stathis, et al.,</u> Case No. 18-CI-269 (2018) In Kentucky state court (the "Kentucky State Action").

2.  Pursuant to 28 <u>U.S.C.</u> §§ 2201-2202, Stathis and Celebrity seek a declaratory relief and related relief to compel the USTA to register, declare and deem the race horse named "Mettle" to be "eligible" to participate in horse racing events. Specifically, Celebrity Farms and Stathis seek a declaratory judgment directing that USTA: (i) undertake any and all actions to declare and

1

deem Mettle is "eligible" to participate in racing events; (ii) provide staking and registration fees are otherwise paid relating to such eligibility; and (iii) that the Court direct and declare that any and all money and/or winnings generated and received from Mettle's racing be held in constructive trust for the benefit of the ultimate owner of Mettle, as will ultimately be determined by the Kentucky Court of Appeals hearing the Kentucky State Action.

3.     This action is ripe for declaratory judgment because there exists an actual controversy capable of immediate relief and remedy under federal law amongst the parties.

## JURISDICTION & VENUE

4.     This action arises under the federal Declaratory Judgment Act set forth at 28 U.S.C. §§ 2201(a) and 2202.  The Court therefore has subject matter jurisdiction over this matter based upon a federal question of law pursuant to 28 U.S.C. § 1331.

5.     This Court also has diversity-based subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 since: (i) USTA's national headquarters is located at 6130 S. Sunbury Road, Westerville, OH 43081; (ii) since USTA is an Ohio corporation; (iii) since Celebrity Farms, LLC is a New York limited liability company; (iv) since Stathis is a resident of the State of New York; (v) since Lexington Selected Yearling Sales, Co., LLC ("Lexington") is a Kentucky limited liability company; and (vi) since the amount in controversy involving the value of Mettle alone, not even including its earnings, exceeds $75,000 in value.

6.     Venue is proper in this Court under 28 U.S.C. § 1391(b) since the property that is the subject matter of this action (Mettle) is located in the Southern District of New York, the USTA does business in the State of New York and has offices the State of New York, and since Celebrity and Stathis are based In New York.

2

## THE PARTIES

7.    Stathis is an individual residing within the State of New York.

8.    Celebrity Farms is a limited liability company organized under the laws of the State of New York and residing within the State of New York.

9.    The USTA is a non-profit corporation organized under the laws of the State of Ohio, residing within the State of Ohio, but with a physical presence in thirty-eight 38 states, including New York and Kentucky.

10.    Lexington is a limited liability company organized under the laws of the State of Kentucky and residing within the State of Kentucky.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11.    This action and instant application to the Court concerns a racing horse named "Mettle," which was sired by "Trixton" with "Angelette Hanover" as the dam.

12.    On October 6, 2017, an auction was held within the State of Kentucky where "Mettle" was auctioned for sale.

13.    Prior to the auction of "Mettle" on October 6, 2017, Celebrity Farms (through its duly authorized agent Stathis), Ernie Martinez and Al Crawford entered into a partnership agreement ("The Partnership") to purchase "Mettle" as equal one-third (1/3) partners. Pursuant to the Partnership, each partner was to share in the profits and cost equally so long as "Mettle" was trained by a trainer of Martinez's choosing.

14.    A material part of the inducement for Celebrity Farms to enter into the Partnership included, but was not limited to, the representations and promises of Mr. Martinez and Mr. Crawford to make good on their end of the Partnership Agreement by actually contributing their share of the purchase price and costs for Mettle.

3

15.     Additionally, a material part of Celebrity Farm's inducement to bid on Mettle was having Mr. Martinez and Mr. Crawford be part of the Partnership given their experience and resources in the horse racing industry.

16.     After the Partnership was formed, but prior to the auction, the Partnership reached an agreement with Lexington allowing the Partnership to have sixty (60) days after the auction to satisfy payment.

17.     Also, the Partnership notified Lexington, prior to and after auction, of their arrangement and terms.  Those terms included, but was not limited to, that "Mettle" would be trained by a trainer of Mr. Martinez's choosing.

18.     The agreement between Lexington and the Partnership was affirmed by Lexington after the auction.  After the auction, and in reliance of the above promises, Stathis (on behalf of and as a duly authorized agent of Celebrity Farms) signed the Purchase Agreement with Conditions of Sale ("Purchase Agreement") for "Mettle" on behalf of the Partnership.

19.     Shortly thereafter, Celebrity Farms took possession of Mettle and began stabling, feeding and caring for the horse.  Celebrity Farms has done so since that time without any financial contribution of any kind from Lexington and/or any other third-party.

20.     Within a few days after the auction, Lexington falsely informed Mr. Martinez that Stathis had taken possession of "Mettle" and was having it trained by a trainer that was not selected by Mr. Martinez.

21.     Based upon this intentional misrepresentation, which Lexington knew or should have known was false (and lacked any factual basis to have made such a statement), Mr. Martinez perceived the misrepresentation as a breach of the Partnership Agreement.  Consequently, Mr. Martinez unilaterally "no longer claimed any financial responsibility for "Mettle."

BE:10912705.1/999999-999999

22.     Thereafter, Mr. Crawford also backed out of the Partnership and his personal Partnership obligation to contribute one-third of the purchase price for Mettle.

23.     Lexington knew and/or should have known that making the foregoing false statement would cause significant damage to the Partnership and Celebrity Farms.

24.     Lexington had no legal privilege or justification to make this intentional false statement.

25.     This false statement did cause the Partnership to be breached by Mr. Martinez and Mr. Crawford.

26.     Additionally, Lexington's conduct has caused significant damage to Celebrity Farms.

27.     Celebrity Farms would never have entered into the Partnership Agreement, nor executed the Purchase Agreement after auction had it known that Lexington would act in bad faith, and that Mr. Martinez and Mr. Crawford would consequently back out of the Partnership Agreement.

28.     Subsequently, Lexington brought the Kentucky State Action in the State of Kentucky alleging to have sold "Mettle" to Celebrity Farms in October 2017 during a "yearling" sale in the State of Kentucky.  Attached as **Exhibit "A"** is a true and accurate copy of Lexington's Complaint in the Kentucky State Action, which includes as an attachment the Purchase Agreement with Conditions of Sale for the purchase of Mettle ("the Purchase Agreement").

29.     Celebrity Farms and Stathis responded to that lawsuit with a Counterclaim asserting fraudulent inducement, tortious interference and mutual mistake concerning the contract to purchase Mettle.  Attached as **Exhibit "B"** is a true and accurate copy of that Answer and Counterclaim.

5

30.     Lexington denied any allegations of fraud in the inducement and/or mutual mistake in the formation and/or Purchase Agreement for Mettle.   Attached as **Exhibit "C"** is a true and accurate copy of that Answer to the Counterclaim.

31.     Thereafter, Lexington moved for summary judgment.  The Kentucky state court granted summary judgment in Lexington's favor.

32.     In response, Celebrity Farms filed an appeal of the Kentucky State Court judgment and bonded the judgment amount in full.  Attached as **Exhibit "D"** is a true and accurate copy of that $230,000 posted bond, the Kentucky State Action Order approving the bond and Order staying that action pending appeal.   Consequently the lesser $204,000 judgment in Lexington's favor regarding the sale of Mettle was stayed pending the outcome of Celebrity Farm's appeal of the summary judgment ruling.

33.     Celebrity Farms and Stathis are currently appealing the summary judgment ruling in favor of Lexington, which said appeal has been more than sufficiently bonded with a $230,000 bond to cover a much lesser $204,000 judgment. See **Exhibit "D"**.

34.     Accordingly, in the event Celebrity Farms and Stathis do not prevail on appeal, Lexington is assured of receiving the full purchase price for the sale of Mettle since more than the full price with all possible interest and costs has been bonded by plaintiffs.

35.     Following the grant of summary judgment in favor of Lexington, the USTA sent a correspondence to Celebrity Farms on June 11, 2019 advising of a "ruling" against Celebrity Farms in the Kentucky State Action.   Attached as **Exhibit "E"** is a true and accurate copy of that letter.

36.     Celebrity Farms has been possessing Mettle and paying for the horses' care, stabling, maintenance and training *pendente lite* without objection from Lexington or any of the other potential owners of Mettle.

6

37.     Since December 2018, Celebrity Farms has been urging Lexington to mitigate the potential for damages and losses related to Mettle's value and lifetime earnings, but to no avail. Attached as **Exhibit "F"** is a true and accurate copy of a December 18, 2018 letter from plaintiff's counsel to Lexington to that effect.

38.     To date, Mettle continues to be in the care, custody and control of Celebrity Farms with its trainer and driver continuing to be Stathis.

39.     While the appeal of the Kentucky State Action is pending, Mettle is getting older, time is passing and the horse's economic useful life as a racing horse capable of generating earnings is lapsing.

40.     According to Lexington, Celebrity Farms was the successful highest bidder at the auction for Mettle by way of a $180,000 "winning bid." See **Exhibit "A"**.

41.     Pursuant to Paragraph 8 of the Purchase Agreement's Conditions of Sale, "TITLE PASSES TO THE BUYER AT THE FALL OF THE HAMMER, AT WHICH TIME ALL RISK OF INJURY OR LOSS AND ALL RESPONSIBILITY FOR THE HORSE PASSES TO THE BUYER." (emphasis in original). See **Exhibit "A"**.  Consequently, according to Lexington's own Purchase Agreement that is ultimately prevailed upon in the Kentucky State Action that is pending appeal,  Celebrity Farms is legal and rightful owner and title holder of Mettle as a result of successfully being the highest bidder during the auction for Mettle.

42.     Additionally, Paragraph 7 of the Purchase Agreement's Conditions of Sale governing "Settlement" of the bidding transaction granted Lexington a security interest, financing statement and lien against Mettle and the horse's original Registration Certificate, and its future earnings towards the bidding purchase price. See **Exhibit "A"**.

BE:10912705.1/999999-999999

43.     However, Paragraph 7 only grated such a security interest and lien until Lexington has been paid in full, which it has been by way of Celebrity Farms' posted bond. See **Exhibit "A"**.

44.     Moreover, immediately following the auction, Celebrity Farms took possession, custody and control of Mettle, and has been caring for, feeding and stabling the horse in Goshen, New York at Celebrity Farm's facilities.  At all times since Celebrity Farms took possession of Mettle, Lexington has made absolutely no effort to recoup or recover the horse from Celebrity Farms, nor has Lexington made any demands verbally or in writing to recover the horse.  Attached as **Exhibit "G"** is a true and accurate copy of Stathis' Affidavit in the Kentucky State Action regarding the above facts and attesting to them under oath.

45.     Nevertheless, despite Celebrity Farms: (i) being the legal and titled owner of Mettle pursuant to Lexington's own contractual agreement and the Kentucky State Action ruling; (ii) possessing, stabling, caring for and/or feeding Mettle at Celebrity Farms' own expense and cost since the auction; and (iii) having assured payment to Lexington in full with interest in the event Celebrity Farms does not win on appeal in the Kentucky State Action (which would also remove any purported lien rights Lexington has against the horse or its earnings), the USTA continues unjustifiably and without basis refuses to declare and deem Mettle "eligible" to participate in racing events.

46.     USTA refuses to deem Mettle "eligible" to participate in racing events, despite Celebrity Farms bonding more than the full judgment amount in the Kentucky State Action, thereby fully and satisfactorily paying Lexington for Mettle's entire purchase price in the event Lexington ultimately prevails in the Kentucky State Action appeal.

BE:10912705.1/999999-999999

47.     As a consequence of the USTA's refusal to declare Mettle "eligible" to participate in horse racing events, should Lexington ultimately prevail on its claims, USTA's refusal to consent to eligibility (and the USTA's refusal to declare the horse eligible to participate in races) would unjustifiably and unfairly cause Stathis and/or Celebrity Farms to ultimately pay over $204,000 for a horse that was disallowed to earn any meaningful business revenue over its useful life.

## COUNT I

### (Declaratory Judgment That Mettle is "Eligible" to Participate in Racing Events)

48.     Plaintiffs repeat and reallege each and every paragraph outlined above with the same force and effect as if more fully set forth at length herein.

49.     The USTA's purported basis for refusing to declare Mettle "eligible" to participate in racing events was predicated upon the amount claimed by Lexington not having yet been paid by Stathis or Celebrity Farms.

50.     Pursuant to the Terms and Conditions of Sale for the Purchase Agreement relied upon in Lexington's breach of contract claims in the Kentucky State Action, "title" to Mettle transfers to the purchaser "upon the fall of the hammer." See **Exhibit "A'**.

51.     Stathis and Celebrity Farms have already posted a bond for more than the sum total of money damages claimed by Lexington on account of the sale of Mettle, thereby effectively paying Lexington in full for Mettle's auctioned purchase price.

52.     If Lexington's claims on appeal in the Kentucky State Action are adjudicated with finality in its favor, Lexington is entitled to the full value of the bond, which exceeds the amounts Lexington claims as damages on account of the sale of Mettle.  Consequently, Lexington has been paid in full for the auctioned purchase price for Mettle by way of the appeal bond.

BE:10912705.1/999999-999999

53.     Thus, the stated basis for the USTA refusing to declare Mettle eligible to participate in racing events is untrue and unjustified.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully requests that a declaratory judgment be entered in favor of Celebrity Farms and Stathis and against the United States Trotting Association as follows:

(a)     declaratory judgment that Mettle is "eligible" and must be deemed "eligible" to participate in harness racing events, provided that any registration and staking fees are paid by Celebrity Farms and/or Stathis;

(b)     imposition of a constructive trust on any and all proceeds earned by Mettle in any races in which Mettle participates, with such proceeds to be held for the benefit of whoever Mettle's owner is ultimately determined to be after the final adjudication of the Kentucky State Action currently on appeal; and

(c)     such other and further relief as to this Court deems equitable and proper.

**BRACH EICHLER LLC**
Attorneys for Plaintiffs Sam Stathis and
Celebrity Farms, LLC


*Haralampo Kasolas*

HARALMPO KASOLAS, ESQ.


Dated:  March 16, 2020

10

**VERIFICATION**

State of New ~~York~~ Jersey )
                   ) ss.:
County of ~~New York~~ Essex )

      I, Sam Stathis, being duly sworn, deposes and says: I am the Respondent in this proceeding. I have read the foregoing Complaint and know the contents thereof.  The statements contained therein are truthful and accurate, and based on my personal first-hand knowledge, except as to those matters which are made upon belief.

                                         _____
                                              Sam Stathis

      On March/6, 2020, before me, the undersigned, a Notary Public in and for the State of New ~~York~~ Jersey, personally appeared, "SAM STATHIS," personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to this Verification, and orally acknowledged to me that she executed the same.

_____
Notary Public

NANCY J. CAPRA
A Notary Public of New Jersey
My Commission Expires August 4, 2020

## <u>CERTIFICATION OF GENUINENESS</u>

     I, HARALAMPO KASOLAS, ESQ., hereby certifies that the signature page attached verified to me, the genuineness of the telecopied and/or emailed signatures on this document.  Original signature pages will be provided upon the request of the Court or any party to this action.


                                        *Haralampo Kasolas*

                                        HARALAMPO KASOLAS, ESQ.


Dated:  March 16, 2020

# EXHIBIT A

Case 1:20-cv-03046-AT Document 1 Filed 04/14/20 Page 14 of 76

| AOC-105 | | Case No. 18-CI-$\underline{269}$ |
|---|---|---|
| | | Court   CIRCUIT |
| Commonwealth of Kentucky<br>Court of Justice | | |
| CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | County   FAYETTE |

LEXINGTON SELECTED YEARLING SALES COMPANY, LLC                    **PLAINTIFF**

VS.

SAM STATHIS AND CELEBRITY FARMS, LLC                             **DEFENDANT**

Serve:   Celebrity Farms, LLC
c/o Sam Stathis, Registered Agent
497 Canal Street
New York, NY 10013

**SERVICE BY LONG ARM STATUTE VIA
KENTUCKY SECRETARY OF STATE**


RECEIVED JAN 29 2018

THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANT:

You are hereby notified that a legal action has been filed against you in this court demanding relief as shown on the document delivered to you with this summons. Unless a written defense is made by you or an attorney in your behalf and filed in the clerk's office within 20 days following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name and address of the party or parties demanding such relief against you or his/her/their attorney are shown on the document delivered to you with this summons.

Date: ___JAN 2 5 2018___                  Clerk: _____

VINCENT RIGGS, CLERK
FAYETTE CIRCUIT COURT
CIVIL DIVISION
120 N. LIMESTONE STREET C103
By: _____   LEXINGTON, KENTUCKY 40507 ___ D.C.

**PROOF OF SERVICE**

This summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

This _____ day of _____, 2014.

Served By: _____

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL BRANCH
8 DIVISION
CIVIL ACTION NO. 18-CI-269



FILED
ATTEST, VINCENT RIGGS, CLERK
JAN 25 2018
FAYETTE CIRCUIT CLERK
BY                    DEPUTY

LEXINGTON SELECTED YEARLING                               **PLAINTIFF**
SALES COMPANY, LLC

A TRUE COPY
ATTEST: VINCENT RIGGS, CLERK
VS.                          **COMPLAINT**     FAYETTE CIRCUIT COURT

BY *M Freeman* DEPUTY

SAM STATHIS and                                           **DEFENDANTS**
CELEBRITY FARMS, LLC
Serve:       Kentucky Secretary of State

** ** ** **

Comes the Plaintiff, Lexington Selected Yearling Sales Company, LLC (hereinafter

"LSYSC"), by counsel, and for its cause of action against the Defendants, Sam Stathis

("Stathis") and Celebrity Farms, LLC ("Celebrity" and Stathis and Celebrity collectively

hereinafter "Defendants"), herein states as follows:

**PARTIES**

1.     LSYSC is a Kentucky limited liability company with its principal place of

business located in Lexington, Fayette County, Kentucky.

2.     Stathis is a non-resident of the Commonwealth of Kentucky and is presently

absent therefrom. His last known address is 497 Canal Street, New York, New York 10013.

Stathis has transacted business in the Commonwealth of Kentucky and therefore is subject to the

jurisdiction of this Court. Service of process should be made on Stathis pursuant to KRS

454.210.

3.     Celebrity is a New York limited liability company with an address at 497 Canal

Street, New York, New York 10013 where service of process made be had upon its agent, Sam

Stathis. Celebrity has transacted business in the Commonwealth of Kentucky and therefore is

007589.159361/7637101.1

subject to the jurisdiction of this Court. Service of process should be made on Stathis pursuant to KRS 454.210.

## COUNT I

4.     At the LSYSC 2017 Selected Yearling Sale conducted by LSYSC in Lexington, Fayette County, Kentucky in October, 2017, Stathis, acting in his individual capacity and/or acting as the duly authorized agent for Celebrity but without having filed with LSYSC an authorized agent form and, therefore, being personally liable jointly and severally with Celebrity, purchased, subject to the Conditions of Sale, a copy of which is attached hereto as Exhibit "A", the standardbred horse, METTLE (Hip No. 442) (the "Horse"), as reflected on the Acknowledgement of Purchase and Security Agreement (the "Sales Ticket") which is attached hereto as Exhibit "B".

5.     The Defendants are jointly and severally liable for payment of the purchase price of the Horse.

6.     Stathis and Celebrity have defaulted under the terms of the Conditions of Sale by their failure to pay the balance due on the account for the purchase of the Horse which is the sum of $182,700.00, including late charges of 1.50% per month calculated through January 15, 2018 as reflected on LSYSC's Statement of Account which is attached hereto and designated as Exhibit "C".

7.     Pursuant to the Sales Ticket, the Conditions of Sale and KRS 411.195, LSYSC is entitled to recover its court costs and reasonable attorneys fees incurred in connection with this matter.

8.     Pursuant to the terms of the Conditions of Sale, Stathis and Celebrity have agreed to the exclusive jurisdiction of the Fayette Circuit Court or the United States District Court for

2

the Eastern District of Kentucky, and said Conditions of Sale shall be governed and construed in accordance with the laws of the Commonwealth of Kentucky.

## COUNT II

9.    LSYSC restates and reiterates each and every allegation contained in paragraphs 1 through 8 of the Complaint.

10.    LSYSC, by virtue of the terms of the Sales Ticket, has a valid and enforceable lien upon the Horse and has a right to its return and possession pursuant to KRS 355.9-609 and pursuant to the Conditions of Sale.

WHEREFORE, LSYSC demands as follows:

1.    That LSYSC be awarded judgment against the Defendants, Sam Stathis and Celebrity Farms, LLC, jointly and severally, in the amount of $182,700.00, with accruing late charges thereon at the rate of 1.50% per month from January 15, 2018 until paid.

2.    That LSYSC be adjudged to have a valid and enforceable lien on the Horse and that LSYSC has the right to immediate delivery of the Horse pursuant to proper orders of this Court.

3.    That LSYSC be awarded its costs herein expended, its reasonable attorney's fees, and any and all other relief to which it may appear entitled.

George D. Smith
STOLL KEENON OGDEN PLLC
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
(859) 231-3000

BY: _____
ATTORNEYS FOR LEXINGTON
SELECTED YEARLING SALES
COMPANY, LLC

3

007589.159361/7637101.1

THE LEXINGTON SELECTED YEARLING SALES CO., LLC

# CONDITIONS OF SALE
### IMPORTANT NOTICES – PLEASE READ

This sale is governed by these Conditions of Sale, the Important Notices which appear on the preceding pages of this Catalogue and by all announcements from the auctioneer's stand or otherwise ("Announcements"). All prospective Sellers, Consignors, Bidders and Buyers and all other interested parties are bound by the provisions set forth below, in the Important Notices and Annoucements.

All prospective Bidders are urged BEFORE BIDDING to personally examine with care, or cause their agents and/or veterinarians to examine with care, any horse upon which they may be interested in bidding. All horses purchased at this Sale are purchased **"AS IS"** with all existing conditions and defects, except those conditions and defects which are specifically warranted in these Conditions of Sale.

Consignors may make arrangements with prospective Bidders/Buyers prior to sale which differ from these Conditions of Sale. In this event, the Company shall have no responsibility in regard to any such agreed upon arrangements and, except to the extent provided in these Conditions of Sale, their enforcement shall be the responsibility of the parties to the agreement.

All prospective Purchasers who utilize Agents are further urged to reach an agreement with the Agent concerning the Agent's apparent or real conflicts of interest and disclosure of the Agent's compensation, if any, from whatever sources, directly or indirectly, relating to or arising out of, the Agent's services. *KRS 230.357 makes it unlawful to receive money or any item of value in excess of $500.00 in connection with the sale or purchase of a horse except with full disclosure and written consent of both Purchaser and Seller; provided, however, this prohibition shall not be applicable where the Agent is acting soley for and compensated soley by the principal.*

**1. DEFINITIONS.** As used in these Conditions of Sale: the "*Company*" shall mean The Lexington Selected Yearling Sales Company, LLC, and the "*Auctioneer*" shall mean the licensed auctioneer(s) employed by the Company to conduct this auction sale.

**2. APPLICABLE LAW.** The horses described in this Catalogue are offered for sale pursuant to the laws of the Commonwealth of Kentucky.

**3. RIGHT TO BID RESERVED.** In accordance with KRS 355.2-328 and KRS 330.210, the right to bid in this sale is reserved for all Sellers, including their disclosed and undisclosed agents, unless otherwise announced at the time of sale. Purchasers therefore agree and acknowledge that Sellers have the right to set reserves implemented by the Auctioneer upon horses so entered which are not disclosed to Purchasers and also have the right to conduct by-bidding as related to their entries.

**4. WARRANTY DISCLAIMERS.** OTHER THAN THOSE LIMITED WARRANTIES EXPRESSLY STATED IN THESE CONDITIONS OF SALE (IN CONDITION 11) OR UNLESS OTHERWISE EXPRESSLY ANNOUNCED AT TIME OF SALE, THERE IS NO WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, BY COMPANY, SELLER, AND/OR CONSIGNOR AS TO THE SOUNDNESS, CONDITION, WIND OR OTHER QUALITY OF ANY HORSE SOLD IN THIS SALE. THERE IS NO WARRANTY, EXPRESS OR IMPLIED, BY COMPANY, SELLER AND/OR CONSIGNOR, EXCEPT AS SPECIFICALLY SET FORTH HEREIN, AS TO THE MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF ANY HORSE OFFERED IN THIS SALE. SUBJECT TO THE LIMITED WARRANTIES STATED HEREIN (IN CONDITION 11) ALL SALES ARE MADE ON AN **"AS IS"** BASIS WITH ALL FAULTS AND DEFECTS. OTHER THAN FAILURE TO SATISFY THE EXPRESSLY LIMITED WARRANTED CONDITIONS LISTED IN CONDITION 11, NO OTHER DEFECTS SHALL CONSTITUTE A NONCONFORMITY, SUBSTANTIAL OR OTHERWISE, WITH THE TERMS OF THE CONDITIONS OF SALE/CONTRACT.

**5. BIDDING PROCEDURE.** The person making the highest bid recognized by the Auctioneer shall be the Buyer and shall forthwith sign an Acknowledgment of Purchase. If an Acknowledgment of Purchase is not presented to the Buyer for signature prior to the commencement of bidding on the next lot offered, the Buyer shall forthwith identify himself to the Auctioneer as the Buyer and shall sign an Acknowledgment of

**22**

Purchase as soon as it is presented. If any person other than the Buyer signs an Acknowledgment of Purchase for a particular horse, such action shall not confer any right, title or interest in the horse in question. Upon learning of an erroneous signing of an Acknowledgment of Purchase, the Auctioneer shall immediately cause an Acknowledgment of Purchase to be presented to the true Buyer for execution.

The Auctioneer reserves the right to reject any and all bids. If the Consignor or any of his agents bids in his own horse, the Company shall be so notified within 30 minutes of the conclusion of the sales session during which the particular horse was bid in.

**6. BIDDING DISPUTES.** If a dispute arises involving two or more Bidders, the Auctioneer shall forthwith adjudicate it, and his decision shall be absolute, final and binding on all parties. Bids received after the fall of the hammer are not grounds for dispute. Bids acknowledged by bid spotters employed by the Company are recognized as if tendered to the Auctioneer. In cases of dispute, the bidding shall be forthwith reopened for advance bids and if no advance is made, the horse in question shall be considered sold to the person last recognized as the highest bidder. Advance bidding shall be restricted to the parties to the dispute. However, if, after the bidding is reopened, the recognized bid is reduced below the bid previously existing at the commencement of a dispute, bidding shall be reopened to all bidders.

**7. SETTLEMENT.** Each Buyer shall make settlement with the Cashier within thirty (30) minutes after the fall of the hammer. **Payments to any other person, including a Consignor, his agent or representative, shall not constitute settlement.** Payment must be made in the form of U.S. Currency, certified check, cashier's check or traveler's check, unless the financial responsibility of the Buyer has been previously approved by the Company. The use of personal checks and credit shall be available only to Buyers who have made the necessary arrangements with the Company prior to the sale. Buyers utilizing credit arrangements shall make payment in full within fifteen (15) days from the conclusion of the sale. If payment is made by personal check, Registration Certificates will be retained until the Buyer's bank has honored the Company's presentment of Buyer's check.

The Company reserves the right, exercisable in its sole and exclusive discretion, which shall be final and binding upon all parties, **(i)** to refuse to extend credit to Buyers who have unpaid accounts for previous Company or other sales, and **(ii)** to refuse the opportunity to bid or to refuse to accept the bid of a Bidder who **(a)** has an unpaid account from a previous sale, *or* **(b)** has not established his financial responsibility with the Company, *or* **(c)** has not established to the reasonable satisfaction of the Company that payment will be made within thirty (30) minutes after the fall of the hammer. The Company further retains the right to demand re-establishment of credit for any Buyers at previous sales prior to their bidding in this sale; and the Company reserves the right, at any time and for any reason (except race, sex, color or creed), including, but not limited to, the Company's arbitrary determination, to revoke any credit previously established and to refuse to accept bid(s) from any Bidder who has not established, prior to his bidding, that payment will be made in full within thirty (30) minutes after the fall of the hammer. The approval or disapproval of a Bidder's financial responsibility shall be within the sole discretion of the Company, and shall be final and binding upon all parties.

Buyer hereby grants the Company and the Consignor a security interest in and lien upon each horse purchased, its original Registration Certificate, and any products and proceeds thereof to secure payment of the purchase price, sales tax and other indebtedness owed by Buyer to the Company and the Consignor, and Buyer hereby appoints the Company as its attorney-in-fact to prepare, execute and file any Financing Statements or documents necessary to perfect and enforce the security interest created herein. By execution of the Acknowledgment of Purchase for a particular horse, the Buyer acknowledges and ratifies this security interest and lien and the authority given to the Company to execute, deliver, and record the security instruments contemplated hereby.

Each Buyer acknowledges and agrees **(i)** that the Company and the Consignor, and each of them individually, may (but shall not be obligated to) take such additional actions and incur such costs and expenses as they, or either of them, in their sole discretion, may deem necessary or appropriate to preserve, protect and maintain the value of this security interest and lien, including, without limitation, the payment of stakes

fees in respect of each or any horse purchased as such fees become due, and **(II)** that any and all costs and expenses incurred by the Company or the Consignor for this purpose will constitute additional indebtedness of the Buyer which is secured by this security interest and lien.

The Company shall hold the registration certificates for all horses purchased by any Buyer until the Buyer's account, including late charges and any other fees, have been paid in full.

The Company shall not be bound by any oral or written agreement or alleged agreement varying from these Conditions of Sale between the Buyer and the Consignor. No Buyer shall be entitled to any setoff or credit against the purchase price of any horse, unless written notice of the setoff or credit in favor of the Buyer is delivered to the Company prior to the time the horse enters the sale ring; and no credit or setoff shall be effective for any horse which is subject to a lien or security interest in favor of any third party, unless the third party has consented, in writing, to the setoff or credit prior to the time the horse enters the auction ring.

**8. TITLE AND DELIVERY.** TITLE PASSES TO THE BUYER AT THE FALL OF THE HAMMER, AT WHICH TIME ALL RISK OF INJURY OR LOSS AND ALL RESPONSIBILITY FOR THE HORSE PASSES TO THE BUYER. Responsibility for expenses incurred on the horse, after the fall of the hammer, become the Buyer's obligation at the passage of the title. The Buyer or his representative may take possession immediately after the fall of the hammer, but such possession shall not be deemed delivery. Delivery is effected only after the Buyer has presented himself to the Cashier and made settlement, which settlement shall be within thirty (30) minutes after the fall of the hammer. Upon settlement, delivery will be made in the form of a "Stable Release". After delivery, each Buyer is responsible for the care and feeding of each horse purchased by the Buyer and shall promptly remove each purchased horse no later than 6:00 p.m. on the day immediately following the day of the sale session in which the horse was purchased. IF A BUYER FAILS TO COMPLY WITH THIS PROVISION, HE SHALL BE RESPONSIBLE FOR STABLING AND SUCH OTHER REASONABLE CHARGES AS DETERMINED BY THE COMPANY, OR THE COMPANY MAY HAVE THE HORSE REMOVED AT THE BUYER'S SOLE RISK AND EXPENSE.

Notwithstanding the provisions of this Condition 8, the Company shall have the right of resale accorded by Condition 14 of these Conditions of Sale.

**9. DEFAULT.** The failure of any Buyer **(i)** to sign an Acknowledgment of Purchase, **(ii)** to pay for any horse purchased, **(iii)** to obtain advance approval of credit or financial responsibility, or **(iv)** to provide and pay for full mortality insurance as required, shall constitute a default. In the event of any such default, the Company and the Consignor shall have the right to repossess any and all horses for which proper payment has not been forthcoming and to pursue all available remedies against the Buyer. Furthermore, at the Company's sole and exclusive discretion, the horse may be brought again through the auction ring during the same sales session, if practicable, and may then be sold with the prior attempted sale being voidable by the Company. If it is not practicable to resell the horse during the same sales session, the horse may be resold by the Company at either public or private sale, including on any subsequent day or sales session of the sale in question, without notice to the defaulting Buyer and with the cost of sale and attorneys' fees and expenses to be paid by Buyer. Any deficiency resulting from resale on account of any default which is not collected from the defaulting Buyer shall be borne by the Consignor, and the Company shall have no responsibility therefor. If any horse resold pursuant to such a default sells for an amount greater than the final recognized bid of the prior attempted sale, all additional proceeds of this sale shall be credited to the Consignor and none to the defaulting Buyer. Any Buyer declared in default shall be liable for a Delinquency or Late Charge at the rate of one and one-half percent (1½%) per month on the unpaid purchase price from the date of sale until paid (representing an effective interest rate of eighteen percent (18%) per annum). Should any resale fail to satisfy a defaulting Buyer's account in full, the Buyer shall pay the Company, forthwith, the amount owing, including late charges. If these payments are not made, the Company may institute suit either in its name or in the name of the Consignor against the defaulting Buyer, in which event the Buyer shall pay any and all costs of suit incurred by the Company and/or the Consignor, including reasonable attorneys' fees and expenses and any other damages available to the Company by law, including reimbursement for expenses in caring for the horse in question.

**10. ANNOUNCEMENTS.** Horses catalogued in this sale are offered with their pedigrees, eligibility for incentive programs, engagements, and health and immunization records as represented by the Consignor. The Company, although it has made reasonable efforts to state Catalogue information correctly, is not responsible for the accuracy of any information provided either in the Catalogue or from the auction stand, such information being as represented by, and the exclusive responsibility of, the Consignor. ANNOUNCEMENTS FROM THE AUCTION STAND SHALL TAKE PRECEDENCE OVER THE CATALOGUE. IT IS THE RESPONSIBILITY OF THE CONSIGNOR TO VERIFY THE ACCURACY OF ALL INFORMATION AND TO NOTIFY THE COMPANY, PRIOR TO THE SALE, OF ANY CORRECTIONS, ERRORS, OMISSIONS OR ADDITIONS PRIOR TO THE OFFERING OF ANY HORSE FOR SALE IN THE SALE RING. A BUYER SHALL SEEK REDRESS ONLY AGAINST THE CONSIGNOR IN CASE OF AN ERROR OR OMISSION. The Consignor and the Buyer agree to hold the Company harmless from and against any and all liability or responsibility for any such errors or omissions.

**11. RETURNS OF PURCHASED HORSES.** UNLESS OTHERWISE EXPRESSLY ANNOUNCED AT THE TIME OF SALE AND EXCEPT FOR THE WARRANTIES OF THE CONSIGNOR SET FORTH BELOW IN THIS CONDITION 11, THERE IS NO GUARANTEE OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE SOUNDNESS, CONDITION, WIND, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE OF ANY HORSE OFFERED IN THIS SALE.

Unless otherwise noted in the Catalogue or announced at the time of the sale, the Consignor warrants that the following are true both at the time of Consignment and at the time of the sale: **(i)** that each consigned horse is correctly described in the Catalogue as a colt, a ridgeling, a gelding, a filly or a stallion; **(ii)** that no consigned horse has been conceived as a result of embryo transfer; **(iii)** that no embryo, egg, semen or other genetic material (other than genetic material required and used for DNA testing and other nonproductive purposes) has been harvested from any consigned horse; and **(iv)** that each consigned horse is duly registered as a standardbred with the appropriate authority.

Any horse whose condition is contrary to the Consignor's warranties set forth in the immediately preceding paragraph of this Condition 11 and is not so announced at the time of sale will be subject to return to the Consignor with refund of the purchase price, **provided (i) that the Company is actually notified in writing and by veterinary certificate of such defect or variation, and (ii) that the rejection or revocation of acceptance on the above grounds occurs and the veterinary certificate is received by the Company within forty-eight (48) hours after the start of the sales session at which the horse in question was sold.** If the Consignor's veterinarian disagrees with the veterinary certificate supplied by the Buyer, the Company shall appoint a third veterinarian whose certificate in these circumstances shall be binding upon the Consignor, the Buyer and all other parties, absent fraud or bad faith. The parties acknowledge that they expressly waive any requirement that the third-party veterinarian conduct a hearing and further waive any right they may have to participate in any arbitration procedure other than as provided in these Conditions of Sale. Company shall have no liability to any party as a consequence of any breach by the Consignor with respect to the limited warranties of the Consignor set forth above.

All horses in this sale have been DNA tested for parentage certification, with the results furnished or to be furnished to the Company. If any unprocessed DNA results prove to be negative (such that the horse does not qualify for the parentage indicated in the Catalogue), the Company shall notify the Buyer and the horse in question shall be returned to Consignor with refund of the purchase price.

In any case in which a horse is returned to the Consignor in accordance with these Conditions of Sale, the Consignor shall pay all proper expenses incurred on the horse from the fall of the hammer until the return of the horse to the Consignor. Proper expenses include, but are not limited to, such items as veterinarian charges, vanning, and boarding. The parties acknowledge that only the conditions set forth in this Condition 11 will permit rescission of sale, and that rescission hereunder shall be the Buyer's sole and exclusive remedy. In all other respects, the **"AS IS"** nature of this sale remains in full force and effect.

**Other than failure to satisfy the aforementioned expressly warranted conditions, no other defects shall constitute a nonconformity, substantial or otherwise, with the terms of the contract.**

Case 1:20-cv-03016-AT Document 1 Filed 04/14/20 Page 22 of 76

**12. AUTHORIZED AGENTS.** Only those persons acting pursuant to notarized letters of authorization or with the Company's approval may act on behalf of a principal, whether or not the principal is in attendance at the sale. If the Company accepts a non-notarized authorization which is later shown to be invalid, such acceptance by the Company shall in no way relieve the agent of personal liability with respect to all matters arising out of this sale. Any person purchasing a horse as agent without a notarized letter of authorization or the Company's prior written approval shall be personally liable for all matters in connection with the purchase of the horse, including payment of the purchase price and all other obligations arising out of these Conditions of Sale. The Company may pursue the agent and/or the principal, jointly and severally, for the full purchase price and all other obligations of the Buyer in connection with the purchase of such horse. All persons acting as agents for principals also are responsible for ensuring that the principal either has approved credit or makes settlement for the full purchase price for each horse purchased not later than thirty (30) minutes after the fall of the hammer. By signing the sales ticket, regardless of the form of the signature, a person acting as agent agrees to be personally liable, jointly and severally, with the principal, for the full purchase price of the horse purchased if the principal either does not have approved credit or does not make settlement for the full purchase price within thirty (30) minutes after the fall of the hammer.

**13. SALES TAX.** Each horse offered for sale in this Catalogue is subject to the six percent (6%) Kentucky Retail Sales Tax, which must be paid by the Buyer in addition to the purchase price, unless the sale of the horse qualifies for exemption under the Rules and Regulations of the Department of Revenue of the Commonwealth of Kentucky. It is the responsibility of the Buyer to furnish the Company with certificates or other documentation of exemption in the form approved by the Department of Revenue. Instructions and forms will be furnished by the Company.

**14. COMPANY RIGHTS DURING PENDENCY OF CONTROVERSIES.** If, during the pendency of any dispute, controversy or claim, no party is willing to take possession of the horse which is the subject matter of the dispute, all interested parties agree that the Company may take all such steps as it deems advisable in the maintenance and care of such horse, including, without limitation, board, veterinary care, and any other reasonable expenditures, and that all costs incurred by the Company shall be reimbursed by the Buyer upon demand.

The Company shall also have the sole discretionary right, but shall be under no obligation, to sell the horse in controversy at any sale, public or private, and upon such terms and conditions as the Company may deem appropriate. Such sale may be made, within the sole and exclusive discretion of the Company, with or without notice to the Consignor or the Buyer. All costs and expenses incurred by the Company in connection with any such sale shall bear interest at the rate of eighteen percent (18%) per year, and the Company shall be reimbursed for such costs and expenses, plus interest thereon, by the party ultimately determined to be the owner of the horse in controversy. If the subject horse is resold, the parties agree that the Company and/or the Consignor shall be reimbursed first for any expenses they have incurred in the care of the horse and for their legal expenses, with the balance, if any, to be paid to the appropriate party. The Consignor and the Buyer further agree to hold the Company harmless from and against any deficiency or loss that the Consignor and/or the Buyer may incur upon the resale of such horse in the event that the Company is unable to resell the horse for an amount equal to or greater than the original purchase price.

Any cause of action arising out of the purchase and sale of any horse at this sale shall be commenced not more than one year after the sale. Provided, however, that this limitation of action shall not apply to an action for the recovery from the Buyer of the purchase price, plus interest and expenses (including reasonable attorney fees), including repossession of any horses purchased at this sale. The consignor and his agent voluntarily and intentionally waive any right that they may have to a trial by jury in respect to any litigation arising from or connected with this sale. The laws of the Commonwealth of Kentucky shall govern the construction of these Conditions of Sale and the rights, remedies, and duties of the parties hereto. In the event of any litigation arising out of these Conditions of Sale or the transactions contemplated hereby, the parties agree that any action or suit shall be brought in a court of record in the County of Fayette, Commonwealth of Kentucky, or in the United States District Court for the Eastern District of Kentucky, and the parties hereby consent to the venue and jurisdiction of such courts.

FILED: ORANGE COUNTY CLERK 01/16/2020 01:02 PM

NYSCEF DOC. NO. 5

INDEX NO. EF000422-2020

RECEIVED NYSCEF: 01/16/2020

The Company will endeavor to protect the interests of both the Consignor and the Buyer, but the duties and obligations of the Company to such persons shall be strictly limited to those expressly imposed upon the Company by these Conditions of Sale. ALL OTHER DUTIES AND OBLIGATIONS, INCLUDING FIDUCIARY AND OTHER DUTIES WHICH MIGHT OTHERWISE BE IMPOSED UPON THE COMPANY BY OPERATION OF LAW, ARE HEREBY EXPRESSLY DISCLAIMED, EXCEPT THAT THE COMPANY SHALL BE REQUIRED TO EXERCISE THAT STANDARD OF CARE GENERALLY EXERCISED BY OTHER COMPARABLE HORSE AUCTION COMPANIES.

**15. MERGER OF AGREEMENT.** All announcements and all Important Notices on the preceding pages of this Catalogue are incorporated in these Conditions of Sale and made a part of the agreement for the sale of each catalogued horse. The Consignor or the Company may have made oral statements or published advertisements concerning the horses described in this Catalogue or this sale generally. Such statements or advertising do not constitute warranties, shall not be relied upon by the Buyer, and are not part of the agreement for sale. The entire agreement for sale is embodied in these Conditions of Sale, the Important Notices on the preceding pages of this Catalogue, the Agent Authorization Form (if any), the Credit Application (if any), the announcements, and the Acknowledgment of Purchase. Any attempt on the part of the Buyer to unilaterally alter or modify these Conditions of Sale by making changes on the Acknowledgment of Purchase is prohibited and shall be invalid and unenforceable. These aforementioned documents, as modified by the announcements made pursuant to Condition 10, constitute the final expression of the parties' agreement and are a complete and exclusive statement of that agreement. Notwithstanding the above, the Consignor (including owner) and the Buyer may enter into a written agreement which modifies the limited warranties as provided herein; however, no such action by the Consignor and the Buyer shall modify or alter any of the duties, responsibilities and rights of the Company, as provided in these Conditions of Sale and the Consignor's Contract.

# LEXINGTON SELECT YEARLING SALES CO., LLC

P.O. Box 8790 • Lexington KY 40533

## ACKNOWLEDGMENT OF PURCHASE AND
## SECURITY AGREEMENT

**EXHIBIT "B"**

Date 10/6/17 _____ Hip No. 442 _____

Horse METTLE _____

Final Bid Amount: 180,000 _____

PURCHASER'S NAME Sam Stather Celebrity Farm ___
(Please print)

BUSINESS ADDRESS _____

CITY New York STATE _____ ZIP _____

PHONE _____ FAX _____ SOCIAL SECURITY NO. _____

AGENT'S NAME(If other than purchaser) _____

BUSINESS ADDRESS _____

CITY _____ STATE _____ ZIP _____

PHONE _____ FAX _____ SOCIAL SECURITY NO. _____

I hereby acknowledge my purchase of the above-described horse and agree to pay to the Lexington Selected Yearling Sales Company, LLC (the "Sale Company") for such purchase, my final bid amount (the Final Bid stated above). In addition to the Final Bid I agree to pay Kentucky sales tax at the rate of six percent (6%) of the purchase price. I acknowledge that I have read the Conditions of Sale as printed in the catalogue for this sale; that I bid and agreed to purchase said horse subject to said Conditions of Sale. I understand that pursuant to Condition Seventh thereof, I hereby grant a security interest in said horse, the original registration certificate for said horse and all products and proceeds thereof, to the Sale Company and, furthermore, hereby grant unto the Sale company (sometimes "Secured Party") the authority to file this document together with a copy of the catalogue page for the above referenced horse for purposes of identification, the same to constitute a financing statement should Secured Party so deem the same to be necessary. I agree to pay the Sale company reasonable attorney's fees and legal cost in the event of legal action to collect the final bid amount, to enforce said Conditions or in the event of any dispute whatsoever involving my purchase of the horse. I acknowledge that should I default, the Secured Party shall have any and all remedies stated in the Conditions and of a Secured Party pursuant to the Uniform Commercial Code as adopted in Kentucky.

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, BY SECURED PARTY OR CONSIGNOR AS TO MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OF THE HORSE OR ANY OTHER HORSE SOLD. THE PRINTED MATERIAL DESIGNATED AS "IMPORTANT NOTICES" AND "CONDITIONS OF SALE" IN THE CATALOGUE FOR THIS SALE IS INCORPORATED HEREIN AND MADE A PART HEREOF, AS IF COPIED AT LENGTH HEREIN.

PURCHASER MUST INITIAL IF CLAIMING EXEMPTION. Purchaser, having purchased the horse described herein at the sale conducted by Lexington Selected Yearling Sale Company, LLC on the above date, claims exemption from Kentucky sales Tax and certifies as follows:
The purchase is made by a non-resident of Kentucky of a horse less than two (2) years of age and will immediately be transported outside of Kentucky after the sale or following holding of the horse temporarily within Kentucky for training purposes.

NOTICE: The purchaser must make settlement with Lexington Selected Yearling Sales Co., LLC for the full purchase price not later than thirty minutes from the fall of the hammer or have approved credit with Lexington Selected Yearling Sales Co., LLC for this sale. The individual signing this agreement, regardless of the form of the signature, agrees to be personally liable, jointly and severally with the purchaser, for the full purchase price if the purchaser does not make settlement within thirty minutes or have approved credit or if Lexington Selected Yearling has not been provided with a signed buyer's authorized agent form granting purchase authority during this sale to the individual signing this agreement.

PURCHASER

X _____

LEXINGTON SELECTED YEARLING SALES CO., LLC (Secured Party)

BY: _____
P.O. Box 8790, Lexington, Ky 40533

White - Office Copy        Canary - Customer Copy

**EXHIBIT "C"**

## LEXINGTON SELECTED YEARLING SALES
P.O. BOX 8790
LEXINGTON KY 40533
PHONE: 859-255-8431   FAX: 859-255-0302

### S T A T E M E N T   O F   A C C O U N T
2017 Lexington Selected Yearling Sale

CELEBRITY FARMS LLC & SAM STATHIS
497 CANAL ST
NEW YORK NY 10013

**Page 1**

**1/24/2018**

| Date | Reference | Description | | Amount |
|------|-----------|-------------|---|--------|
| 10/6/2017 | HIP # 430 | FOOL TO BELIEVE | Price: | 30,000.00 |
| 11/10/2017 | | CK 2945 | | -30,000.00 |
| | | | Balance Due: | 0.00 |
| 10/6/2017 | HIP # 442 | METTLE | Price: | 180,000.00 |
| 12/15/2017 | | Late Charge @ 1.50% | | 2,700.00 |
| | | | Balance Due: | 182,700.00 |
| 10/6/2017 | HIP # 481 | ITALIAN STYLE | Price: | 45,000.00 |
| 11/10/2017 | | CK 2945 | | -45,000.00 |
| | | | Balance Due: | 0.00 |

**PLEASE REMIT THIS AMOUNT:**               182,700.00
**PAYMENT DUE:**      12/15/2017

PAST DUE.

TERMS OF SALE: PAYMENT WITHIN 15 DAYS OF AUCTION. IN THE EVENT OF FAILURE
TO MAKE FULL PAYMENT, THE ACCOUNT SHALL BE DEEMED DELINQUENT AND A LATE
CHARGE OF 1.5% PER MONTH WILL BE ADDED TO THE UNPAID BALANCE.

Consigned by Hunterton Sales Agency, Agent, Paris, Kentucky
Raised at Hunterton Farm at Stoner Creek, Paris, Kentucky

**442**

## METTLE
(NEW JERSEY & KENTUCKY ELIGIBLE)
BAY COLT Foaled May 12, 2016 Tattoo No. 0P626

Barns
3-4

| | | | |
|---|---|---|---|
| Trixton 3,1:50.3 ............... | Muscle Hill 3,1:50.1 ............... | Muscles Yankee 3,1:52.2 | |
| | | Yankee Blondie 3, 1:59.4f | |
| **METTLE** | Emilie Cas El 3,1:57.1f ............... | Garland Lobell 3,1:55.3 | |
| | | Amour Angus 3,2:03.1f | |
| Angelette Hanover 2,1:56.3 ......... | Yankee Glide 3,1:55.1 ............... | Valley Victory 3,1:55.3 | |
| | | Gratis Yankee 2,2:03 | |
| | Angelina Hall ............... | Striking Sahbra 3,1:56 | |
| | | Amour Angus 3,2:03.1f | |

**1st Dam**
ANGELETTE HANOVER 2,1:56.3 ($317,892) by Yankee Glide. 2 wins at 2. At 2, winner leg New Jersey Sires S. at Meadowlands; second in Final Breeders Crown at Pocono, Kentuckiana Stallion Mgmt T.; third in leg New Jersey Sires S. at Meadowlands, elim. Breeders Crown at Pocono. At 3, second in Coaching Club Oaks; third in Final Hudson Filly T. From 3 previous foals, dam of 2 winners, 1 in 1:58, including:
ARIELLA (M) 3,1:57.2 ($19,251) (Donato Hanover). 3 wins at 3.
Nick of Time 3,2:00.3f-'17 ($16,240) (Lucky Chucky). Winner at 3. Race timed in 1:56.2 at 3. Now 3, third in leg Tamarind Ser. at The Meadows.
Time is Fleeting ($2,550) (Lucky Chucky). Now 2, third in leg Excelsior Ser. - A at Monticello.

**2nd Dam**
ANGELINA HALL by Striking Sahbra. From 8 living foals, dam of 7 winners, 7 in 2:00, including:
ANNIE HALL (M) 3,1:57 ($103,469) (Like A Prayer). Winner at 3. At 3, second Final Kentucky Sires S.; third leg Kentucky Sires S. At 4, third leg Super Bowl Ser. at Meadowlands. Dam of WOODY 2,2:04.4h; 3,1:57.2f ($109,254), BUZZ 3,1:56f; 1:55.1-'17 ($107,269).
RAPHAELL 2,Q2:03f; 3,Q2:00.3f; 4,1:56.3f ($63,346) (Cantab Hall). 8 wins, 3 thru 5.
ANGEL EYES HANOVER (M) 3,1:57.1 ($62,750) (Cantab Hall). Winner at 3. At 2, second in leg Pennsylvania Sires S. at The Meadows, leg Pennsylvania Stallion Ser. at Chester; third in Reynolds Mem.
ANONYME HANOVER (M) 2,1:56.3 ($57,818) (Explosive Matter). 3 wins at 2. At 2, winner leg Pennsylvania Stallion Ser. at The Meadows, leg Kindergarten Classic Ser. at Lexington (2); second leg Pennsylvania Sires S. at Philadelphia, Arden Downs S.; third Bluegrass S.
UP FRONT MURRAY 3,1:56.2f ($36,598) (Muscle Massive). 5 wins, 3 thru 5. At 2, third in leg Pennsylvania Stallion Ser. at The Meadows.
MUSCLE AMOUR (M) 2,1:59.1; 3,Q1:58.4 ($31,112) (Muscles Yankee). 2 wins at 2. At 3, second and third in leg New Jersey Sires S. at Meadowlands. Dam of LOVE ME MADLY 2,Q2:00.1; 3,1:55.4f, CITIZENSHIP 2,Q2:05f; 3,Q1:57.2-'17.

**3rd Dam**
AMOUR ANGUS 2,2:08.2f; 3,2:03.1f ($21,355) by Magna Force. 5 wins at 2 and 3. Hall of Fame in 2008. At 2, winner leg Quebec Circuit S. at Blue Bonnets, Quebec, Trois Rivieres, etc. From 14 foals, dam of 11 winners, 4 in 1:55, 8 in 2:00, including:
ANDOVER HALL 2,1:56.2; 3,1:51.3 ($870,510) (Garland Lobell). 11 wins at 2 and 3. Dan Patch, Nova 2-Year-Old Trotting Colt of the Year in 2001. World Champion. At 2, winner elim. and Final Campbellville S., Champlain S., Bluegrass-S., Ralph Willong Mem., elim. Breeders Crown, Hanover Colt S. At 3, winner World Trotting Derby; second heat Kentucky Futy., American-National S., elim. Hambletonian S., elim. Canadian Trotting Classic, elim. Kentucky Spring Champ.; third heat Kentucky Futy., elim. Breeders Crown.
ANGUS HALL 2,1:54.4z; 3,1:54.3 ($830,654) (Garland Lobell). 8 wins at 2 and 3. World Champion. At 2, winner Champlain S., elim. Breeders Crown, John Simpson Mem., elim. Valley Victory T.; second in Bluegrass S., Campbellville S.; third in Final Valley Victory T., Final Breeders Crown. At 3, winner elim. Hambletonian S., elim. Matron S.; second in Final Hambletonian S., heat World Trotting Derby, American-National S., Bluegrass S.; third in Breeders Crown, elim. and Final Beacon Course T., heat Kentucky Futy.
CONWAY HALL 2,1:57.2; 3,1:53.4 ($818,864) (Garland Lobell). 13 wins at 2 and 3. Dan Patch, Nova, O'Brien 2-Year-Old Trotting Colt of the Year in 1997. World Champion. At 2, winner Champlain S., Campbellville S., Bluegrass S., leg and Final Fresh Faces Ser. at Hoosier, Post Printing T.; second in elim. and Final Valley Victory T. At 3, winner heat Kentucky Futy., John Simpson Mem., elim. American-National S., elim. Breeders Crown; second in Final Breeders Crown, Final American-National S., Kentucky Futy., Speedy Scot T.; third in heat World Trotting Derby (2), elim. Beacon Course T.
ADAMS HALL 3,1:55.1; 1:53-Europe ($450,000-Int.) (Garland Lobell). Winner at 3, prior to export. At 2, second in Bluegrass S.; third in elim. and Final Lexington Breeders Classic.
EMILIE CAS EL (M) 2,1:59.2f; 3,1:57.1f ($441,000-Int.) (Garland Lobell). 19 wins at 2 and 3. O'Brien Horse of the Year; O'Brien 2-Year-Old Trotting Filly of the Year in 1994. At 2, winner 2 legs and Final Coupe Des Eleveurs, elim. and Final Canadian Breeders Champ., leg Quebec Circuit - A (5). At 3, winner leg Quebec Circuit - A (4), leg Coupe Des Eleveurs. Dam of TRIXTON 2,1:54.4; 3,1:50.3 ($947,057), IMPRESSIVE KEMP 2,1:55.3; 3,1:54.3 ($501,074), ARCHDUKE KEMP 3,1:57.2f; 1:54.1-Europe ($245,620-Int.), etc. Producers: GARNELIA ANGUS (4,T1:57.1 (grandam of GODIVA HALL 2,1:56.1; 3,1:54.4f; 4,1:53.3f-$808,008), Amour Hall (dam of AMOUR AMI 3,1:54.1; 1:52.2f-Europe-$808,358).
Next Dam - KENWOOD SCAMPER (Texas-LINDY'S SPEEDY LADY 3,2:03.1f-Speedy Count)

**STAKES ENGAGEMENTS**

| | | | |
|---|---|---|---|
| Arden Downs | Currier & Ives | Int'l. Stallion | NJ Garden State Trot | NJ Trotting Futy. | Swedish Breeders |
| Bluegrass Series | Dexter Cup | Kentucky Futurity | NJ Sires & Fairs | Old Oaken Bucket | Yonkers Trot |
| Breeders Crown | Hambletonian | KY KBDFAGBIF | NJ Stds. Dev. Fund | Simcoe | Zweig Memorial |
| Champlain | | | | | |

LSYSC-STATHIS 000012

# EXHIBIT B

Case 1:20-cv-03818-AT Document 1 Filed 04/14/20 Page 28 of 76

**Filed**          18-CI-00269                              **Vincent Riggs, Fayette Circuit Clerk**

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION VIII
CIVIL ACTION NO. 18-CI-269

LEXINGTON SELECTED YEARLING SALES COMPANY, L.L.C.                    PLAINTIFF

V.              <u>ANSWER AND COUNTERCLAIMS OF DEFENDANTS,
SAM STATHIS AND CELEBRITY FARMS, L.L.C.</u>

SAM STATHIS

AND

CELEBRITY FARMS, L.L.C.                                               DEFENDANTS

** ** ** **

*ANSWER*

        Come the Defendants, Sam Stathis ("Mr. Stathis") and Celebrity Farms, L.L.C. ("Celebrity

Farms") (collectively "Defendants"), by and through counsel, and for their Answer to Plaintiff,

Lexington Selected Yearling Sales Company, L.L.C.'s ("Plaintiff") Complaint, states as follows:

**FIRST DEFENSE**

        1.      Plaintiff's Complaint fails to state a claim against Defendants upon which relief can

be granted.

**SECOND DEFENSE**

        2.      Plaintiff's Complaint fails to join necessary and/or proper parties and failure to

prosecute in the proper name and/or capacity of the real party in interest.

**THIRD DEFENSE**

        3.      This Court lacks subject matter jurisdiction.

**Filed**          18-CI-00269      02/24/2018          **Vincent Riggs, Fayette Circuit Clerk**

Filed          18-CI-00269                    Vincent Riggs, Fayette Circuit Clerk

FAAE9711-DF00-4B86-9E50-079B6CA2BA2E : 000002 of 000013

### FOURTH DEFENSE

4.   This Court lacks personal jurisdiction over Defendants.

### FIFTH DEFENSE

5.   Venue is improper.

### SIXTH DEFENSE

6.   There has been an insufficiency of process and/or service of process upon

Defendants.

### SEVENTH DEFENSE

7.   Plaintiff has failed to mitigate and/or minimize its alleged damages.

### EIGHTH DEFENSE

8.   Plaintiff's Complaint is barred by the doctrines of laches, estoppel, fraud, unclean

hands, duress, and/or waiver.

### NINTH DEFENSE

9.   Plaintiff's Complaint is barred by the doctrines of accord and satisfaction, payment,

settlement, and/or release.

### TENTH DEFENSE

10.   Plaintiff's Complaint is barred due to lack or want of consideration.

### ELEVENTH DEFENSE

11.   Plaintiff's Complaint is barred due to Plaintiff's failure to fulfill material conditions

of the contract, both precedent and subsequent.

### TWELFTH DEFENSE

12.   Plaintiff's Complaint is barred by the statute of frauds.

Filed          18-CI-00269     02/24/2018          Vincent Riggs, Fayette Circuit Clerk

AACO : 000002 of 000013

Case 1:20-cv-03016-AT   Document 1   Filed 04/14/20   Page 30 of 76

**Filed**                    18-CI-00269                    Vincent Riggs, Fayette Circuit Clerk

## THIRTEENTH DEFENSE

13.     Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in numerical paragraph 1 of Plaintiff's Complaint and, therefore, the same are denied.

14.     Defendants admit that: 1) Mr. Stathis is a non-resident of the Commonwealth of Kentucky; 2) he is presently absent therefrom; and, 3) his current address is 497 Canal Street, New York, New York 10013. Defendants deny the balance of the allegations contained in Paragraph 2 of the Complaint as they are legal conclusions.

15.     Defendants admit that Celebrity Farms is a New York limited liability company with an address at 497 Canal Street, New York, New York 10013 and that its registered agent for service of process is Mr. Stathis. Defendants deny the balance of the allegations contained in Paragraph 3 of the Complaint as they are legal conclusions.

16.     Defendants deny the allegations contained in Paragraphs 4, 5, and 6 of the Complaint.

17.     Paragraph 7, 8 and 10 are legal conclusions and, therefore, the same are denied.

18.     Defendants admit and deny the allegations incorporated by reference in Paragraph 9 as each and every allegation incorporated by reference in those Paragraphs are specifically admitted or denied in this Answer.

19.     Defendants deny the allegations contained in Plaintiff's Complaint not expressly admitted herein.

20.     Defendant's deny the requested relief contained in the paragraph denoted "Wherefore" and all its subparts.

**Filed**           18-CI-00269      02/24/2018          Vincent Riggs, Fayette Circuit Clerk

Case 1-20-cv-03016-AT Document 1 Filed 04/14/20 Page 31 of 76

Filed                18-CI-00269                    Vincent Riggs, Fayette Circuit Clerk

### FOURTEENTH DEFENSE

21.     Defendants reserve the right to assert additional defenses that may arise due to a change in the law or in conformity with evidence revealed through the discovery process.

*COUNTERCLAIMS*

Comes the Defendants, Sam Stathis ("Mr. Stathis") and Celebrity Farms, L.L.C. ("Celebrity Farms") (collectively "Defendants"), by and through counsel, and for their Counterclaims against Plaintiff, Lexington Selected Yearling Sales Company, L.L.C. ("Plaintiff"), states as follows:

### FACTUAL BACKGROUND

22.     Prior to the auction of "Mettle" on or about October 6, 2017, Defendants and two other individuals, Ernie Martinez ("Mr. Martinez") and Al Crawford ("Mr. Crawford"), entered into a partnership agreement ("The Partnership") to purchase "Mettle" as partners and share the purchase costs equally among them so long as "Mettle" was trained by a trainer of Mr. Martinez's choosing.

23.     Part of the inducement for Defendants to enter into The Partnership included, but not limited, representations and promises made by Mr. Steve Stewart, the owner of "Mettle," prior to the auction.

24.     After the Partnership was formed, but prior to the auction, The Partnership reached an agreement with Plaintiff allowing them to have 60 days after the auction to satisfy payment terms for the purchase of "Mettle." Also, The Partnership notified Plaintiff of their arrangement and the terms, that included but not limited to, that "Mettle" would be trained by a trainer of Mr. Martinez's choosing.

4

Filed                    18-CI-00269                    Vincent Riggs, Fayette Circuit Clerk

25.   After the auction, Defendants signed the purchase agreement with Plaintiff on behalf of The Partnership, which was approved and acknowledged by Plaintiff at time of execution. Shortly thereafter, Mr. Stathis took possession of "Mettle."

26.   Thereafter, and in reliance of the agreement made by The Partnership, and representations by the Plaintiff and Mr. Stewart, Defendants took financial measures that they otherwise would not have regarding "Mettle."

27.   Then, after Defendants took possession of "Mettle," Plaintiff falsely informed Mr. Martinez that Defendants had taken possession of "Mettle" and was having it trained by a trainer that was not selected by Mr. Martinez. Based upon this representation, which it knew or should have known was false, Mr. Martinez perceived it as a breach of The Partnership and no longer claims any financial responsibility for "Mettle."

28.   Also, after Mr. Martinez refused to acknowledge financial responsibility under The Partnership agreement, Mr. Crawford breached The Partnership agreement with Defendants by refusing to acknowledge any financial responsibility for "Mettle."

29.   As a result of the above, Defendants have suffered significant and ongoing financial damages as it relates to "Mettle."

30.   Furthermore, at the same auction on or about October 6, 2017, Defendants purchased two other horses from Plaintiff, "Fool to Believe" and "Italian Style."

31.   As shown by Exhibit C of Plaintiff's Complaint, Defendants have paid Plaintiff for these two horses. However, Plaintiff has refused to issue title for these two horses to Defendants without legal justification and in violation of the separate purchase agreements between Defendants and Plaintiff.

5

Filed                18-CI-00269                    Vincent Riggs, Fayette Circuit Clerk

## COUNT I – BREACH OF CONTRACT
### (GOOD FAITH AND FAIR DEALING)

32.     Defendants restate and incorporate by reference the preceding allegations as if set forth verbatim.

33.     Plaintiff, Defendants, Mr. Martinez, and Mr. Crawford into a contract for the purchase of "Mettle."

34.     Inherent in this Contract was a duty upon Plaintiff of good faith and fair dealing.

35.     Plaintiff breached this duty by falsely informing Mr. Martinez that "Mettle" was going to be trained by someone not selected by Mr. Martinez.

36.     The duty of good faith was material to the Contract.

37.     As a result of the above, Defendant has suffered significant and ongoing damages.

38.     Therefore, such conduct constitutes breach of the Contract, entitling Defendants to an unspecified amount of damages, prejudgment and post-judgment at the statutory rates, recission of the Contract, and any other damages Defendants may be entitled.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

39.     Defendants restate and incorporate by reference the preceding allegations as if set forth verbatim.

40.     Prior to auction, Defendants, Mr. Martinez, and Mr. Crawford entered into the Partnership wherein Defendants, Mr. Martinez, and Mr. Crawford would equally share in the purchase price of "Mettle" so long as it trained with a trainer of Mr. Martinez's choosing.

41.     Prior to the auction, Plaintiff was informed of the Partnership agreement between Defendants, Mr. Martinez, and Mr. Crawford to equally share in the purchase price of "Mettle" in the event they won the auction.

6

Filed                    18-CI-00269                           Vincent Riggs, Fayette Circuit Clerk

42.     After the auction and after Defendants took possession of "Mettle," Plaintiff negligently, reckless, maliciously, fraudulently and/or intentionally made a false misrepresentation to Mr. Martinez, without justification or basis in fact, that Defendants had the horse picked up and delivered to a trainer not selected by Mr. Martinez.

43.     As a result of the above conduct, Defendants have suffered significant and ongoing damages.

44.     Therefore, such conduct constitutes tortious interference of contractual relations, entitling Defendants to an unspecified amount of damages, prejudgment and post-judgment at the statutory rates, recission of the contract, and any other damages Defendants may be entitled.

### COUNT III – BREACH OF CONTRACT
### ("FOOL TO BELIEVE")

45.     Defendants restate and incorporate by reference the preceding allegations as if set forth verbatim.

46.     On or about October 6, 2017, Plaintiff and Defendants entered into a contract for the sale and purchase of "Fool to Believe."

47.     As part of the agreement between the parties, Plaintiff agreed to tender title in "Fool to Believe" upon payment of the purchase price.

48.     At this time, Defendants have performed on all terms of the agreement, including payment.

49.     However, Plaintiff refuses to issue title despite Defendants' performance, thereby causing significant and ongoing damage to Defendants.

50.     Such conduct constitutes breach of the contract, entitling Defendants to damages in excess of this Court's jurisdictional limit, pre-judgment and post-judgment interest at the

Filed                    18-CI-00269        02/24/2018          Vincent Riggs, Fayette Circuit Clerk

**Filed**           18-CI-00269                    Vincent Riggs, Fayette Circuit Clerk

applicable statutory and/or contractual rates, attorney fees, specific performance, and any other damages Defendants may be entitled.

## COUNT IV – CONVERSION
### ("FOOL TO BELIEVE")

51.     Defendants restate and incorporate by reference the preceding allegations as if set forth verbatim.

52.     In regards to the title of "Fool to Believe," Plaintiff has intentionally dispossessed Defendants of the title and continues to deprive Defendants of its use and value without permission and with knowledge that said title belongs to Defendants, thereby causing significant and ongoing damage to Defendants.

53.     Such conduct constitutes conversion, entitling Defendants to damages in excess of this Court's jurisdictional limit, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, specific performance, and any other damages Defendants may be entitled.

## COUNT V – UNJUST ENRICHMENT
### ("FOOL TO BELIEVE")

54.     Defendants restate and incorporate by reference the preceding allegations as if set forth verbatim.

55.     After Plaintiff and Defendants entered into a contract for the purchase of "Fool to Believe," Defendants has performed on all terms of the agreement, including payment, thereby conferring a benefit upon Plaintiff at Defendants' expense.

56.     However, part of the contract was for Plaintiff to issue title to the horse upon payment, which Plaintiff refuses to do at this time.

8

57.     Plaintiff is inequitable retaining title to the horse without justification, thereby depriving Defendants of the value of the horse and other significant and ongoing damages.

58.     Such conduct constitutes unjust enrichment, entitling Defendants to damages in excess of this Court's jurisdictional limit, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, specific performance, and any other damages Defendants may be entitled.

### COUNT VI – BREACH OF CONTRACT
### ("ITALIAN STYLE")

59.     Defendants restate and incorporate by reference the preceding allegations as if set forth verbatim.

60.     On or about October 6, 2017, Plaintiff and Defendants entered into a contract for the sale and purchase of "Italian Style."

61.     As part of the agreement between the parties, Plaintiff agreed to tender title in "Italian" upon payment of the purchase price.

62.     At this time, Defendants have performed on all terms of the agreement, including payment.

63.     However, Plaintiff refuses to issue title despite Defendants' performance, thereby causing significant and ongoing damage to Defendants.

64.     Such conduct constitutes breach of the contract, entitling Defendants to damages in excess of this Court's jurisdictional limit, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, specific performance, and any other damages Defendants may be entitled.

9

FILED: ORANGE COUNTY CLERK 01/16/2020 01:02 PM Case 1:20-cv-03016-AT Document 1 Filed 04/13/20 Page 37 of 76 NYSCEF DOC. NO. 6                              INDEX NO. EF000422-2020

NYSCEF DOC. NO. 6

RECEIVED NYSCEF: 01/16/2020

Filed          18-CI-00269                    Vincent Riggs, Fayette Circuit Clerk

## COUNT VII – CONVERSION
### ("ITALIAN STYLE")

65.    Defendants restate and incorporate by reference the preceding allegations as if set forth verbatim.

66.    In regards to the title of "Italian Style," Plaintiff has intentionally dispossessed Defendants of the title in the horse and continues to deprive Defendants of its use and value without permission and with knowledge that said title belong to Defendants, thereby causing significant and ongoing damage to Defendants.

67.    Such conduct constitutes conversion, entitling Defendants to damages in excess of this Court's jurisdictional limit, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, specific performance, and any other damages Defendants may be entitled.

## COUNT VIII – UNJUST ENRICHMENT
### ("ITALIAN STYLE")

68.    Defendants restate and incorporate by reference the preceding allegations as if set forth verbatim.

69.    After Plaintiff and Defendants entered into a contract for the purchase of "Italian Style," Defendants have performed on all terms of the agreement, including payment, thereby conferring a benefit upon Plaintiff at Defendants' expense.

70.    However, part of the contract was for Plaintiff to issue title to the horse upon payment, which Plaintiff refuses to do at this time.

71.    Plaintiff is inequitable retaining title to the horse without justification, thereby depriving Defendants of the value of the horse and other significant and ongoing damages.

10

Filed          18-CI-00269      02/24/2018          Vincent Riggs, Fayette Circuit Clerk

Case 1-20-cv-03016-AT Document 1 Filed 04/14/20 Page 38 of 76

72.     Such conduct constitutes unjust enrichment, entitling Defendants to damages in excess of this Court's jurisdictional limit, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, specific performance, and any other damages Defendants may be entitled.

## COUNT IX – PUNITIVE DAMAGES

73.     Defendants restate and incorporate by reference the preceding allegations as if set forth verbatim.

74.     Defendants assert that the above-described actions of Plaintiff were outrageous, malicious, oppressive, fraudulent, wanton, reckless, and grossly negligent, entitling Defendants to punitive damages.

## PRAYER FOR RELEIF

**WHEREFORE**, the Defendants, Sam Stathis and Celebrity Farms, L.L.C. pray and demand as follows:

a.      That all claims of Plaintiff, Lexington Selected Yearling Sales Company, L.L.C., against them be dismissed with prejudice;

b.      Judgment in favor of Defendants under Count I for Breach of Contract ("Good Faith/Fair Dealing") against Plaintiff imposing damages to be determined at trial, pre-judgment interest, recission of the Contract, and post-judgment interest at the statutory rate;

c.      Judgment in favor of Defendants under Count II for Tortious Interference with Contractual Relations against Plaintiff imposing damages to be determined at trial, pre-judgment interest, recission of the Contract, and post-judgment interest at the statutory rate;

d.      Judgment in favor of Defendants under Count III for Breach of Contract ("Fool to Believe") against Plaintiff imposing damages to be determined at trial, pre-judgment and post-

11

Case 1:20-cv-03918-AT Document 1 Filed 24/20 Page 39 of 76
Filed              18-CI-00269                    Vincent Riggs, Fayette Circuit Clerk

judgment interest at the applicable statutory and/or contractual rates, attorney fees, and any other damages Defendants may be entitled;

     e.     Judgment in favor of Defendants under Count IV for Conversion ("Fool to Believe") against Plaintiff imposing damages to be determined at trial, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, and any other damages Defendants may be entitled;

     f.     Judgment in favor of Defendants under Count V for Unjust Enrichment ("Fool to Believe") against Plaintiff imposing damages to be determined at trial, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, and any other damages Defendants may be entitled;

     g.     Judgment in favor of Defendants under Count VI for Breach of Contract ("Italian Style") against Plaintiff imposing damages to be determined at trial, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, and any other damages Defendants may be entitled;

     h.     Judgment in favor of Defendants under Count VII for Conversion ("Italian Style") against Plaintiff imposing damages to be determined at trial, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, and any other damages Defendants may be entitled;

     i.     Judgment in favor of Defendants under Count VIII for Unjust Enrichment ("Italian Style") against Plaintiff imposing damages to be determined at trial, pre-judgment and post-judgment interest at the applicable statutory and/or contractual rates, attorney fees, and any other damages Defendants may be entitled;

j.      Judgment in favor of Defendants under Count IX for Punitive Damages against

Plaintiff as determined at trial;

k.      For their costs herein expended, including attorney's fees;

l.      For a trial by jury on all issues so triable; and,

m.      For any and all other relief to which they may be entitled.

Respectfully submitted,

TRUE, GUARNIERI & AYER, LLP
124 Clinton Street
Frankfort, Kentucky 40601
Phone: 502-605-9900
Fax:    502-605-9901
plawson@truelawky.com

/s/ Philip C. Lawson
PHILIP C. LAWSON
ATTORNEY FOR DEFENDANTS,
CELEBRITY FARMS, LLC AND
SAM STATHIS

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was electronically filed with the Fayette Circuit Court Clerk's Office and served via U.S. Mail (postage pre-paid) and fax on this 24th day of February, 2018, upon the following:

George D. Smith, Esq.
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507
Fax: 859-253-1093

/s/ Philip C. Lawson
ATTORNEY FOR DEFENDANTS

FAAE9711-DF90-4B66-9E50-079B6CA2BA2E : 000013 of 000013

AACO : 000013 of 000013



Alison Lundergan Grimes
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718

January 30, 2018

SAM STATHIS AND CELEBRITY FARMS, LLC
SERVE: SAM STATHIS
497 CANAL STREET
NEW YORK, NY 10013

FROM:   SUMMONS DIVISION
        SECRETARY OF STATE

RE:     CASE NO: 18-CI-269

COURT:  Circuit Court Clerk
        Fayette County, Division: 8
        120 N Limestone St
        Lexington, KY 40507
        Phone: (859) 246-2141 OR (859) 246-2142

Legal action has been filed against you in the captioned case. As provided under
Kentucky law, the legal documents are enclosed.

## Questions regarding this action should be addressed to:

   (1) **Your attorney, or**
   (2) **The attorney filing this suit whose name should appear on
       the last page of the complaint, or**
   (3) **The court or administrative agency in which the suit is filed
       at the clerk's number printed above.**

The Kentucky Secretary of State has NO POWER to make a legal disposition of this
case. Your responsive pleadings should be filed with the clerk of the court or agency
where the suit is filed and served directly on your opposing party.

No copy of future pleadings need be sent to this office unless you wish us to serve
the pleading under a particular statute or rule and pay for said service.



Alison Lundergan Grimes
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718

January 30, 2018

SAM STATHIS AND CELEBRITY FARMS, LLC
SERVE: CELEBRITY FARMS, LLC
C/O SAM STATHIS, REGISTERED AGENT
497 CANAL STREET
NEW YORK, NY 10013

FROM:   SUMMONS DIVISION
        SECRETARY OF STATE

RE:     CASE NO: 18-CI-269

COURT:  Circuit Court Clerk
        Fayette County, Division: 8
        120 N Limestone St
        Lexington, KY 40507
        Phone: (859) 246-2141 OR (859) 246-2142

Legal action has been filed against you in the captioned case. As provided under
Kentucky law, the legal documents are enclosed.

**Questions regarding this action should be addressed to:**

   **(1) Your attorney, or**
   **(2) The attorney filing this suit whose name should appear on**
        **the last page of the complaint, or**
   **(3) The court or administrative agency in which the suit is filed**
        **at the clerk's number printed above.**

The Kentucky Secretary of State has NO POWER to make a legal disposition of this
case. Your responsive pleadings should be filed with the clerk of the court or agency
where the suit is filed and served directly on your opposing party.

No copy of future pleadings need be sent to this office unless you wish us to serve
the pleading under a particular statute or rule and pay for said service.

Kentucky Secretary of State's Office          Summons Division                    1/30/2018

# EXHIBIT C

FILED: ORANGE COUNTY CLERK 01/16/2020 INDEX NO. EF000422-2020
NYSCEF DOC. NO. 7                                          RECEIVED NYSCEF: 01/16/2020

Case 1:20-cv-03018-AT Document 1 Filed 04/14/20 Page 44 of 76

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL BRANCH
DIVISION VII
CIVIL ACTION NO. 18-CI-269
*Electronically Filed*

LEXINGTON SELECTED YEARLING                                    PLAINTIFF
SALES COMPANY, LLC

VS.           <u>REPLY TO DEFENDANTS' COUNTERCLAIMS</u>

SAM STATHIS and
CELEBRITY FARMS, LLC                                          DEFENDANTS

**         **         **         **

Comes the Plaintiff, Lexington Selected Yearling Sales Company, LLC (hereinafter

"LSYSC"), by counsel, and for its Reply to the Counterclaims (the "Counterclaims") of the

Defendants, Sam Stathis ("Stathis") and Celebrity Farms, LLC ("Celebrity" and Stathis and

Celebrity collectively hereinafter "Defendants"), states as follows:

<u>FIRST DEFENSE</u>

The Counterclaims fail to state a claim against LSYSC upon which relief may be granted,

and accordingly should be dismissed and held for naught.

<u>SECOND DEFENSE</u>

With respect to the numerical paragraphs of the Counterclaims, LSYSC states as follows:

1.      LSYSC is without sufficient information to form a belief as to the truth of the

allegations in paragraphs 22 and 23 of the Counterclaims, and accordingly denies same.

2.      LSYSC denies the allegations in paragraph 24 of the Counterclaims.

Filed 18-CI-00269 Vincent Riggs, Fayette Circuit Clerk

3.    With respect to the allegations in paragraph 25 of the Counterclaims, LSYSC admits that the Defendants signed a purchase agreement and that Stathis took possession of Mettle; however, LSYSC denies the remaining allegations in paragraph 25 of the Counterclaims.

4.    LSYSC is without sufficient information to form a belief as to the truth of the allegations in paragraph 26 of the Counterclaims, and accordingly denies same.

5.    LSYSC denies the allegations in paragraph 27 of the Counterclaims.

6.    LSYSC is without sufficient information to form a belief as to the truth of the allegations in paragraphs 28 and 29 of the Counterclaims, and accordingly denies same.

7.    LSYSC admits the allegations in paragraph 30 of the Counterclaims.

8.    With respect to the allegations in paragraph 31 of the Counterclaims, LSYSC admits that the Defendants have made payments on "Fool to Believe" and "Italian Style." LSYSC, however, denies that it has breached any agreements between it and the Defendants. Furthermore, LSYSC affirmatively states that, pursuant to Section 7 of the Conditions of Sale (Exhibit A to the Complaint), it has held the registration certificates because Defendants' account has not been paid in full.

9.    In response to paragraph 32 of the Counterclaims, LSYSC reiterates, realleges and incorporates herein by reference each and every response it has made in response to the allegations contained in paragraphs 22 through 31 of the Counterclaims.

10.    LSYSC denies the allegations in paragraph 33 of the Counterclaims.

11.    The allegations in paragraph 34 of the Counterclaims constitute conclusions of law to which no responsive pleading is required.

12.    LSYSC denies the allegations in paragraph 35 of the Counterclaims.

13. The allegations in paragraph 36 of the Counterclaims constitute conclusions of law to which no responsive pleading is required.

14. LSYSC is without sufficient information to form a belief as to the truth of the allegations in paragraph 37 of the Counterclaims, and accordingly denies same.

15. LSYSC denies the allegations in paragraph 38 of the Counterclaims.

16. In response to paragraph 39 of the Counterclaims, LSYSC reiterates, realleges and incorporates herein by reference each and every response it has made in response to the allegations contained in paragraphs 22 through 38 of the Counterclaims.

17. LSYSC is without sufficient information to form a belief as to the truth of the allegations in paragraph 40 of the Counterclaims, and accordingly denies same.

18. LSYSC denies the allegations in paragraphs 41 and 42 of the Counterclaims.

19. LSYSC is without sufficient information to form a belief as to the truth of the allegations in paragraph 43 of the Counterclaims, and accordingly denies same.

20. LSYSC denies the allegations in paragraphs 44 of the Counterclaims.

21. In response to paragraph 45 of the Counterclaims, LSYSC reiterates, realleges and incorporates herein by reference each and every response it has made in response to the allegations contained in paragraphs 22 through 44 of the Counterclaims.

22. LSYSC admits the allegations in paragraph 46 of the Counterclaims.

23. LSYSC denies the allegations in paragraphs 47 and 48 of the Counterclaims.

24. With respect to the allegations in paragraph 49 of the Counterclaims, LSYSC affirmatively states that, pursuant to Section 7 of the Conditions of Sale (Exhibit A to the Complaint), it has held the registration certificates because Defendants' account has not been

FILED: ORANGE COUNTY CLERK 01/16/2020

NYSCEF DOC. NO. 7

Case 1:20-cv-03018-AT Document 1 Filed 04/14/20 Page 47 of 76

18-CI-00269

Vincent Riggs, Fayette Circuit Clerk

NO. EF000422-2020

RECEIVED NYSCEF: 01/16/2020

paid in full. LSYSC specifically denies that Defendants have fully performed under the Conditions of Sale.

25. LSYSC denies the allegations in paragraph 50 of the Counterclaims.

26. In response to paragraph 51 of the Counterclaims, LSYSC reiterates, realleges and incorporates herein by reference each and every response it has made in response to the allegations contained in paragraphs 22 through 50 of the Counterclaims.

27. With respect to the allegations in paragraph 52 of the Counterclaims, LSYSC affirmatively states that, pursuant to Section 7 of the Conditions of Sale (Exhibit A to the Complaint), it has held the registration certificates because Defendants' account has not been paid in full. LSYSC specifically denies that Defendants are entitled to the registration certificates.

28. LSYSC denies the allegations in paragraph 53 of the Counterclaims.

29. In response to paragraph 54 of the Counterclaims, LSYSC reiterates, realleges and incorporates herein by reference each and every response it has made in response to the allegations contained in paragraphs 22 through 53 of the Counterclaims.

30. LSYSC denies the allegations in paragraph 55 of the Counterclaims.

31. LSYSC denies the allegations in paragraphs 56 and 57 of the Counterclaims. Furthermore, LSYSC affirmatively states that, pursuant to Section 7 of the Conditions of Sale (Exhibit A to the Complaint), the Defendants' account must be paid in full before title is issued.

32. LSYSC denies the allegations in paragraph 58 of the Counterclaims.

33. In response to paragraph 59 of the Counterclaims, LSYSC reiterates, realleges and incorporates herein by reference each and every response it has made in response to the allegations contained in paragraphs 22 through 58 of the Counterclaims.

FILED: ORANGE COUNTY CLERK 01/16/2020

NYSCEF DOC. NO. 7

Case 1:20-cv-03016-AT Document 1 Filed 04/14/20 Page 48 of 76

Filed 18-CI-00269

Vincent Riggs, Fayette Circuit Clerk

NO. EF000422-2020

RECEIVED NYSCEF: 01/16/2020

34. LSYSC admits the allegations in paragraph 60 of the Counterclaims.

35. LSYSC denies the allegations in paragraph 61, 62, 63, and 64 of the Counterclaims. Furthermore, LSYSC affirmatively states that, pursuant to Section 7 of the Conditions of Sale (Exhibit A to the Complaint), the Defendants' account must be paid in full before title is issued.

36. In response to paragraph 65 of the Counterclaims, LSYSC reiterates, realleges and incorporates herein by reference each and every response it has made in response to the allegations contained in paragraphs 22 through 64 of the Counterclaims.

37. LSYSC denies the allegations in paragraphs 66 and 67 of the Counterclaims. Furthermore, LSYSC affirmatively states that, pursuant to Section 7 of the Conditions of Sale (Exhibit A to the Complaint), the Defendants' account must be paid in full before title is issued.

38. In response to paragraph 68 of the Counterclaims, LSYSC reiterates, realleges and incorporates herein by reference each and every response it has made in response to the allegations contained in paragraphs 22 through 67 of the Counterclaims.

39. With respect to the allegations in paragraph 69 of the Counterclaims, LSYSC admits that it entered a contract with Defendants; otherwise, LSYSC denies the remaining allegations in paragraphs 69 of the Counterclaims.

40. LSYSC denies the allegations in paragraphs 70 and 71 of the Counterclaims. Furthermore, LSYSC affirmatively states that, pursuant to Section 7 of the Conditions of Sale (Exhibit A to the Complaint), the Defendants' account must be paid in full before title is issued.

41. LSYSC denies the allegations in paragraph 72 of the Counterclaims.

42. In response to paragraph 73 of the Counterclaims, LSYSC reiterates, realleges and incorporates herein by reference each and every response it has made in response to the allegations contained in paragraphs 22 through 72 of the Counterclaims.

43. LSYSC denies the allegations in paragraph 74 of the Counterclaims.

44. LSYSC denies each and every allegation contained in the Counterclaims that is not expressly admitted herein.

THIRD DEFENSE

45. LSYSC relies upon the terms, conditions, and exclusions of the Conditions of Sale (Exhibit A to Complaint), to the extent applicable, as bar in whole or in part to the Counterclaims.

FOURTH DEFENSE

46. LSYSC relies upon the failure to name one or more indispensable and/or necessary parties as a bar in whole or in part to the Counterclaims.

FIFTH DEFENSE

47. To the extent the Counterclaims allege fraud, they fail to do so with adequate specificity, by reason of which such claims are barred by CR 9.02.

SIXTH DEFENSE

48. The claims set forth in the Counterclaims are barred in whole or in part by the affirmative defenses set forth in CR 8.03, including, but not limited to, failure of consideration, payment, release, laches, fraud, estoppel, accord and satisfaction, unclean hands and/or waiver.

FILED: ORANGE COUNTY CLERK 01/16/2020 Vincent Riggs, Fayette Circuit Clerk INDEX NO. EF000422-2020

NYSCEF DOC. NO. 7                                                                    RECEIVED NYSCEF: 01/16/2020

## SEVENTH DEFENSE

49.     The claims for punitive damages and exemplary damages set forth in the Counterclaims are barred in whole or in part by Kentucky's punitive damage statute, the United States Constitution, and/or the Kentucky Constitution.

## EIGHTH DEFENSE

50.     Defendants have failed to mitigate their damages, if any there are, and therefore, these damages, and any recovery by Defendants as a result of these alleged damages, should be reduced or barred accordingly.

## NINTH DEFENSE

51.     If Defendants have suffered any damages at all, such damages were cause by Defendants, their representatives or agents, and/or parties other than LSYSC.

## TENTH DEFENSE

52.     Defendants acknowledged, ratified, and/or consented to the alleged acts or omissions, if any, of LSYSC, thereby barring recovery by Defendants.

## ELEVENTH DEFENSE

53.     LSYSC is without fault and relies upon the same as a complete bar to all claims asserted by Defendants in the Counterclaims.

## TWELFTH DEFENSE

54.     LSYSC states that any actions taken with respect to Defendants during the referenced time period were consistent with its rights and obligations under all agreements between and among the parties, including the Conditions of Sale (Exhibit A to the Complaint).

### THIRTEENTH DEFENSE

55.     The damages alleged by Defendants are conjectural and/or speculative.

### FOURTEENTH DEFENSE

56.     The Counterclaims fail to state a cause of action supporting an award of attorney's fees.

### FIFTEENTH DEFENSE

57.     LSYSC affirmatively states that the covenant of good faith and fair dealing cannot be used to contradict express contractual provisions, and thus Defendants' contract claims fail.

### SIXTEENTH DEFENSE

58.     LSYSC affirmatively states that parol evidence rule precludes the introduction of any evidence demonstrating a prior or contemporaneous oral understanding, and thus Defendants' contract claims fail

### SEVENTEENTH DEFENSE

59.     LSYSC hereby gives notice that it intends to rely upon any additional affirmative defenses that become available or apparent during discovery and thus reserves the right to amend its Reply to assert such affirmative defenses.

WHEREFORE, LSYSC having fully answered the Defendants' Counterclaims, hereby demands the following relief:

A.     That it be granted the relief requested in its Complaint filed herein;

B.     That the Defendants' Counterclaims be dismissed and held for naught;

C.     For its costs expended herein, including reasonable attorneys' fees;

D.     For a trial by jury; and

E.     For any and all other relief to which Plaintiff, LSYSC, may appear properly

entitled.

> George D. Smith
> Timothy R. Wiseman
> STOLL KEENON OGDEN PLLC
> 300 W. Vine Street, Suite 2100
> Lexington, Kentucky 40507
> (859) 231-3000
>
> BY: /s/ George D. Smith
>     ATTORNEYS FOR LEXINGTON
>     SELECTED YEARLING SALES
>     COMPANY, LLC

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing has been served to the following via the Court's electronic filing system and U.S. Mail (postage prepaid) on this the 16 day of March, 2018:

> Philip C. Lawson
> True, Guarnieri, & Ayer, LLP
> 124 Clinton Street
> Frankfort, KY 40601
> plawson@truelawky.com

> /s/ George D. Smith
>     ATTORNEYS FOR LEXINGTON
>     SELECTED YEARLING SALES
>     COMPANY, LLC

007589.159361/7661997.2

# EXHIBIT D

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION VIII
CIVIL DIVISION
CASE NO. 18-CI-269

ENTERED
ATTEST, VINCENT RIGGS, CLERK

MAR 20 2019

FAYETTE CIRCUIT CLERK
BY _____ DEPUTY

LEXINGTON SELECTED YEARLING SALES CO., LLC          PLAINTIFF

V.                              **ORDER**

SAM STATHIS, ET AL.                                 DEFENDANTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This matter is before the Court on March 15, 2019 upon Motion by Defendants, Sam Stathis

and Celebrity Farms, LLC, to Approve Supersedeas Bond in the amount of $230,000.00 pursuant

to Kentucky Rules of Civil Procedure 62.03 and 73.04; after reviewing the record, hearing

argument from counsel, and otherwise being duly and sufficiently advised; Defendant's Motion is

HEREBY SUSTAINED;

IT IS HEREBY ORDERED THAT;

1. Defendants' $230,000.00 Supersedeas Bond presented to the Court is HEREBY
   APPROVED; and,

2. Enforcement of the Court's Judgment entered on February 20, 2019 is
   HEREBY STAYED pending the outcome of the Defendant's appeal of the
   February 20, 2019 Judgment.

Entered this _____ day of _____ , 2019.

_____
HON. THOMAS L. TRAVIS
JUDGE, FAYETTE CIRCUIT COURT
DIVISION VIII

A TRUE COPY
ATTEST: VINCENT RIGGS, CLERK
FAYETTE CIRCUIT COURT

BY _____ DEPUTY

1

**TENDERED BY:**

*/s/ Philip C. Lawson*
PHILIP C. LAWSON
TRUE GUARNIERI AYER, LLP
124 Clinton Street
Frankfort, Kentucky 40601
Phone: (502) 605-9900
Fax: (502) 605-9901
plawson@truelawky.com
ATTORNEY FOR DEFENDANTS

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Order was served by U. S. Mail, postage prepaid, on this the _____ day of MAR 20 2019 _____, 2019 upon the following:

George D. Smith, Esq.
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507

Julie A. Neuroth, Esq.
1 Levee Way, Suite 3109
Newport, KY 41071

Donald R. Todd, Esq.
153 Market Street
Lexington, Kentucky 40507

Philip C. Lawson, Esq.
124 Clinton Street
Frankfort, Kentucky 40601

Vincent Riggs
VMulligan

CLERK, FAYETTE CIRCUIT COURT

2

**Platte River Insurance Company**
*115 Glastonbury Blvd., Glastonbury, CT 06033*

## APPEAL BOND

The   Fayette Circuit   Court of the State of   Kentucky   Bond No. **41380492**

LEXINGTON SELECTED YEARLING SALES CO., LLC   )
  )

PLAINTIFFS,                         CASE NO. 18-CI-269
vs .

SAM STATHIS                              )
& CELEBRITY FARMS, LLC           )

DEFENDANTS.

**KNOW ALL MEN BY THESE PRESENTS**, that we   Sam Stathis and Celebrity Farms, LLC
as Principal, and Platte River Insurance Company  a corporation organized under the laws of the State of
Nebraska, and duly authorized to transact business in the State of Kentucky, as Surety, are held and
firmly bound unto   the Commonwealth of Kentucky
in the penal sum of   Two Hundred Thirty Thousand and 00/100 ------------ Dollars  ($230,000.00)
lawful money of the United States to the payment of which well and truly to be made we hereby bind ourselves
and our heirs, administrators, successors, and assigns, jointly and severally, firmly by these presents.

**WHEREAS**, on the   20th   day of   February  , 2019
a judgment was rendered in favor of the Obligee and against the Principal, adjudging and decreeing that the
Obligee recover from said Principal the sum of
Two Hundred Four Thousand and 00/100 ------------------------------- Dollars  ($204,000.00)
together with the Obligee's costs in this action; and

**WHEREAS**, said Principal has appealed, or is about to appeal the court's above mentioned decision and the
whole thereof, and said Principal desires to suspend execution of said judgment pending such appeal.

**NOW, THEREFORE,** the condition of this obligation is such that, if the above named Principal,
  Sam Stathis and Celebrity Farms, LLC   shall well and truly prosecute its appeal with effect
and shall, if the judgment of the appellate court be against it, perform such judgment or decree of said court, and
pay all such damages, interest and costs as may be awarded against principal on such appeal, then this obligation
shall be void, otherwise to remain in full force and effect.

**PROVIDED, HOWEVER,** in no event shall the surety's liability exceed the penal sum of this bond.

**IN WITNESS WHEREOF,** the Principal and Surety have hereunto set their hands and seals this
  28th   day of   February        2019.

                         *Sam Stathis*
                         Principal  Name

Witness: _____      By: _____

Witness _____    **Platte River Insurance Company**

                     By: _____
                     Kim Spinello , Attorney-in-Fact

**Individual Acknowledgment**

State of ___New York___

County of _Suffolk_ ___

On this ___2___ day of _March_ , 2019 , before me personally came _Sam Stathis_ to me known, and known to me to be the individual in and who executed the foregoing instrument, and acknowledged to me that he/she executed the same.

My commission expires _April 27, 2022_ _____ Notary Public

---

**Corporation Acknowledgment**

State of _New York_

County of _Suffolk_

On the ___1___ day of _March_, _2019_ before me personally came _____ _Sam Stathis_ to me known; who being by me duly sworn, did depose and say that he/she/they reside(s) in ___497 Canal Street___ that he/she/they is (are) the _President_ of the _Celebrity Farms_ , the corporation described in and which executed the above instrument; that he/she/they know(s) the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the board of directors of said corporation, and that he/she/they signed his/her/their name(s) thereto by like authority.

My commission expires _April 27, 2022_ _____ Notary Public

---

**Surety Acknowledgment**

State of **New York**

County of **Nassau**

On the 28th day of **February, 2019** personally came **Kim Spinello** to me known , who being by me duly sworn did depose and say that he/she is an Attorney-in-Fact of **Platte River Insurance Company** in and which executed the above Instrument know(s) the corporate seal of said corporation; that the seal affixed to the within instrument is such corporate seal, and that he/she/they signed the said instrument and affixed the said seal as Attorney-in-fact by authority of the Board of Directors of said corporation and by authority of this office under the standing resolution thereof.

My commission expires _____ Notary Public

JACLYN THOMAS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01TH6363772
Qualified in Suffolk County
My Commission Expires 08-28-2021

# PLATTE RIVER INSURANCE COMPANY
## POWER OF ATTORNEY

41380492

**KNOW ALL MEN BY THESE PRESENTS,** That the **PLATTE RIVER INSURANCE COMPANY**, a corporation of the State of Nebraska, having its principal offices in the City of Middleton, Wisconsin, does make, constitute and appoint

---------------------------------FRANK ABBATIELLO; TARA LAVERDIERE; PHILLIP G. SAMUELS; LOUIS J. SPINA----------------------------
-----------------------------------------KIM SPINELLO; DENESE V. THOMPSON----------------------------------------

its true and lawful Attorney(s)-in-fact, to make, execute, seal and deliver for and on its behalf, as surety, and as its act and deed, any and all bonds, undertakings and contracts of suretyship, provided that no bond or undertaking or contract of suretyship executed under this authority shall exceed in amount the sum of

-------------------------------------ALL WRITTEN INSTRUMENTS IN AN AMOUNT NOT TO EXCEED$20,000,000.00-------------------------------------

This Power of Attorney is granted and is signed and sealed by facsimile under and by the authority of the following Resolution adopted by the Board of Directors of **PLATTE RIVER INSURANCE COMPANY** at a meeting duly called and held on the 8th day of January, 2002.

**"RESOLVED**, that the President, and Vice-President, the Secretary or Treasurer, acting individually or otherwise, be and they hereby are granted the power and authorization to appoint by a Power of Attorney for the purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, one or more vice-presidents, assistant secretaries and attorney(s)-in-fact, each appointee to have the powers and duties usual to such offices to the business of the company; the signature of such officers and the seal of the Corporation may be affixed to such power of attorney or to any certificate relating thereto by facsimile, and any such power of attorney or certificate bearing such facsimile signatures or facsimile seal shall be valid and binding upon the Corporation in the future with respect to any bond or undertaking or other writing obligatory in the nature thereof to which it is attached. Any such appointment may be revoked, for cause, or without cause, by any of said officers, at any time."

In connection with obligations in favor of the Florida Department of Transportation only, it is agreed that the power and authority hereby given to the Attorney-in-Fact includes any and all consents for the release of retained percentages and/or final estimates on engineering and construction contracts required by the State of Florida Department of Transportation. It is fully understood that consenting to the State of Florida Department of Transportation making payment of the final estimate to the Contractor and/or its assignee, shall not relieve this surety company of any of its obligations under its bond.

In connection with obligations in favor of the Kentucky Department of Highways only, it is agreed that the power and authority hereby given to the Attorney-in-Fact cannot be modified or revoked unless prior written personal notice of such intent has been given to the Commissioner – Department of Highways of the Commonwealth of Kentucky at least thirty (30) days prior to the modification or revocation.

**IN WITNESS WHEREOF,** the **PLATTE RIVER INSURANCE COMPANY** has caused these presents to be signed by its officer undersigned and its corporate seal to be hereto affixed duly attested, this 27th day of July, 2015.

Attest:

*[signature]* Gary W. Stumper
Gary W. Stumper
President
Surety & Fidelity Operations

*[SEAL: PLATTE RIVER INSURANCE COMPANY CORPORATE SEAL NEBRASKA]*

**PLATTE RIVER INSURANCE COMPANY**

*[signature]* Stephen J. Sills
Stephen J. Sills
CEO & President

STATE OF WISCONSIN
COUNTY OF DANE } S.S.:

On the 27th day of July, 2015 before me personally came Stephen J. Sills, to me known, who being by me duly sworn, did depose and say: that he resides in the County of New York, State of New York; that he is President of **PLATTE RIVER INSURANCE COMPANY**, the corporation described herein and which executed the above instrument; that he knows the seal of the said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation and that he signed his name thereto by like order.

*[NOTARY SEAL: DAVID J. REGELE NOTARY PUBLIC STATE OF WISCONSIN]*

*[signature]* David J. Regele
David J. Regele
Notary Public, Dane Co., WI
My Commission Is Permanent

STATE OF WISCONSIN
COUNTY OF DANE } S.S.:

### CERTIFICATE

I, the undersigned, duly elected to the office stated below, now the incumbent in **PLATTE RIVER INSURANCE COMPANY**, a Nebraska Corporation, authorized to make this certificate, **DO HEREBY CERTIFY** that the foregoing attached Power of Attorney remains in full force and has not been revoked; and furthermore, that the Resolution of the Board of Directors, set forth in the Power of Attorney, is now in force.

Signed and sealed at the City of Middleton, State of Wisconsin this ___28th___ day of ___February___, 2_019_.

*[SEAL]*

*[signature]* Antonio Celii
Antonio Celii
Secretary

THIS DOCUMENT IS NOT VALID UNLESS PRINTED ON GREEN SHADED BACKGROUND WITH A RED SERIAL NUMBER IN THE UPPER RIGHT HAND CORNER. IF YOU HAVE ANY QUESTIONS CONCERNING THE AUTHENTICITY OF THIS DOCUMENT CALL, 800-475-4450.

PR-POA (Rev. 12-2016)

<u>CERTIFICATE OF SOLVENCY UNDER SECTION 1111 OF THE NEW YORK</u>
<u>INSURANCE LAW</u>

### STATE OF NEW YORK

### DEPARTMENT OF FINANCIAL SERVICES

It is hereby certified that
**PLATTE RIVER INSURANCE COMPANY**
Omaha, Nebraska

a corporation organized under the laws of the State of Nebraska and duly authorized to
transact the business of insurance in this State, is qualified to become surety or
guarantor on all bonds, undertakings, recognizances, guaranties and other obligations
required or permitted by law; and that the said corporation is possessed of a capital and
surplus including gross paid-in and contributed surplus and unassigned funds (surplus)
aggregating the sum of $48,272,427 (Capital $4,800,000) as is shown by its sworn
financial statement for the End of the Year, as of December 31, 2017, on file in this
Department, prior to audit.

The said corporation cannot lawfully expose itself to loss on any one risk or hazard to
an amount exceeding 10% of its surplus to policyholders, unless it shall be protected in
excess of that amount in the manner provided in Section 4118 of the Insurance Law of
this State.



In Witness Whereof, I have here-
unto set my hand and affixed the
official seal of this Department
at the City of Albany, this
6th day of June, 2018.

**Maria T. Vullo**
**Superintendent**

By *Jacqueline Catalfamo*

**Jacqueline Catalfamo**
**Special Deputy Superintendent**

www.dfs.ny.gov

**PLATTE RIVER INSURANCE COMPANY**
**BALANCE SHEET**
**December 31, 2017**

### Admitted Assets

| | | |
|---|---|---:|
| Cash and invested assets: | | |
| Bonds | $ | 99,858,262 |
| Common stocks | | 25,382,170 |
| Cash, cash equivalents and short-term investments | | 18,576,581 |
|    Total cash and invested assets | | 143,817,013 |
| | | |
| Investment income due and accrued | | 618,321 |
| Uncollected premiums and agents' balances in course of collection | | 1,305,927 |
| Deferred premiums, agents' balances and installments booked but deferred and not yet due | | 3,062,792 |
| Amounts recoverable from reinsurers | | 1,383 |
| Current federal and foreign income tax recoverable and interest thereon | | 560,354 |
| Net deferred tax asset | | 86,390 |
| Receivables from parent, subsidiaries and affiliates | | 1,331,602 |
| Other admitted assets | | 15,441 |
|    Total admitted assets | $ | 150,799,223 |

### Liabilities and Surplus as Regards Policyholders

| | | |
|---|---|---:|
| Liabilities: | | |
| Losses | $ | 32,577,588 |
| Reinsurance payable on paid losses and loss adjustment expenses | | 2,306,236 |
| Loss adjustment expenses | | 7,067,355 |
| Commissions payable, contingent commissions and other similar charges | | 784,193 |
| Other expenses (excluding taxes, licenses and fees) | | 96,835 |
| Taxes, licenses and fees (excluding federal and foreign income taxes) | | 156,912 |
| Unearned premiums | | 20,010,558 |
| Ceded reinsurance premiums payable (net of ceding commissions) | | 766,606 |
| Amounts withheld or retained by company for account of others | | 38,458,953 |
| Other liabilities | | 299,560 |
|    Total liabilities | | 102,524,796 |
| | | |
| Surplus as regards policyholders: | | |
| Common capital stock | | 4,800,000 |
| Gross paid in and contributed surplus | | 30,739,907 |
| Unassigned funds (surplus) | | 12,734,520 |
|    Surplus as regards policyholders | | 48,274,427 |
|    Total liabilities and capital and surplus | $ | 150,799,223 |

I, Stephen J. Sills, CEO and President of Platte River Insurance Company do hereby certify that to the best of my knowledge and belief, the foregoing is a full and true statutory Statement of Admitted Assets and Liabilities, Capital and Surplus of the Operation at December 31, 2017, prepared in conformity with the accounting practices prescribed by the Insurance Department of the State of Nebraska. IN WITNESS WHEREOF, I have set my hand and affixed the seal of the Corporation at Middleton, Wisconsin.

Stephen J. Sills
CEO & President



# EXHIBIT E

# TGA

## TrueGuarnieriAyer LLP

124 Clinton Street
Frankfort, Kentucky 40601
Phone: (502) 605-9900
Fax: (502) 605-9901
www.truelawky.com

writer's e-mail:

plawson@truelawky.com

December 18, 2018

*Via Email at George.Smith@skofirm.com*
George D. Smith, Esq.
300 W. Vine Street, Suite 2100
Lexington, Kentucky 40507

> **Re:** **Lexington Selected Yearling Sales Company, LLC v. Sam Stathis, et al.**
> **Fayette Circuit Court, Case No. 18-CI-269**

Dear George:

As you know, the window of time for Mettle to race and create a record that allow this horse to be potentially valuable as a race horse in the future, as opposed to the greatly diminished value as a pleasure horse, is about to close. If this window closes, all parties involved are taking on tremendous risk, depending upon how the appeal goes. However, consistent with everyone's duty to mitigate their damages, it is my hope that your client would reconsider and engage with us to find a solution, at least in the interim, that allows this horse to race, make money, establish a record, while also providing the security your client desires in the event the appeal resolves in LSYSC's favor. I have always maintained that such a solution can be achieved.

However, statistically speaking, it is very likely the Court of Appeal's reverses summary judgment in this case given that there are significant factual issues that have not had the benefit of discovery. The Court would likely reverse for no other reason than to lighten their substantial workload and reinforce the often-repeated message to trial courts that premature summary judgments are not favored. I know this as I used to be a clerk for Judge Combs and wrote opinions that were adopted by the panel to this effect on many occasions.

With that said, in the event this occurs, my clients will insist upon a trial and presenting its case to the jury. If they were to prevail, and in the event that Mettle is not given the opportunity to race and build a record, in violation of your client's duty to mitigate, my client's will hold LSYSC fully responsible for the diminished value to the horse, lost profits, and any other damage that may be applicable.

Nonetheless, my client's hope that the parties will come together and come to a reasonable solution that can, at least, address this immediate issue pending appeal. This will diminish your client's exposure in the event that the appeal resolves in our favor while giving LSYSC the security it desires in the event it goes their way. If this is something that interests your client, please let me know as soon as possible.

Case 7:20-cv-03168-VB Document 1-2 Filed 04/21/20 Page 63 of 76

TrueGuarnieriAyer LLP

December 18, 2019
Page 2

Sincerely,

TRUE GUARNIERI AYER, LLP

PHILIP C. LAWSON

PCL/sbr
CC:    Sam Stathis via email

# EXHIBIT F

NYSCEF DOC. NO. 10
INDEX NO. EF000422-2020
RECEIVED NYSCEF: 01/16/2020



**U.S. Trotting Association**

6130 S. Sunbury Rd., Westerville, OH 43081-9309 • www.ustrotting.com

Phone (toll free U.S. & Canada): 877.800.USTA (8782) • Phone: 614.224.2291

Fax (toll free U.S. & Canada): 844.229.1338 • Fax: 614.224.4575

June 11, 2019

Sam Stathis (Celebrity Farms)
497 Canal St
New York, NY 10013

Dear Mr. Stathis,

This letter is to advise you that we are in receipt of a judgment in favor of
Lexington Selected Yearling Sales Company, LLC in the amount of $204,300.00.

Enclosed is a copy of the judgment.

Please be advised that it will be necessary for you to provide us with
documentation, by **July 11, 2019** that you have satisfied the judgment or a ruling
may be issued against you.

Sincerely,

Michele Kopiec
Racetrack Operations & Licensing Manager

*Enclosure*

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
8th DIVISION
CIVIL BRANCH
NO. 18-CI-269

ENTERED
ATTEST, VINCENT RIGGS, CLERK
FEB 20 2019
FAYETTE CIRCUIT CLERK
BY _____ DEPUTY

LEXINGTON SELECTED YEARLING
SALES COMPANY, LLC                                          **PLAINTIFF**

**VS.**                              **JUDGMENT and ORDER**

SAM STATHIS and
CELEBRITY FARMS, LLC                                        **DEFENDANTS**

**VS.**

ERNIE MARTINEZ and AL CRAWFORD              **THIRD-PARTY DEFENDANTS**

* * * * * * * * * * * * * * * * *

This matter came before the Court on February 1, 2019 for a hearing on the Plaintiff's motion for entry of an order making the Court's September 27, 2018 Order granting partial summary judgment final and appealable and setting the amount of judgment related to the Court's granting of summary judgment on the remaining issues between the Plaintiff and Defendants via Opinion and Order dated January 23, 2019.

The Court having reviewed the record and considered the arguments of counsel, and being otherwise sufficiently advised, it is hereby **ORDERED and ADJUDGED** as follows:

1.      That the partial summary judgment granted in favor of the Plaintiff via Order dated September 27, 2018 is now, pursuant to CR 54.02, a _final and appealable_ judgment, and there is no just cause for delay.

2.      That the Plaintiff may recover from the Defendants, Sam Stathis and Celebrity Farms, LLC, jointly and severally, the sum of $204,300.00 plus interest thereon

1



at the agreed rate of 1.50% per month from August 16, 2018 until paid, plus its costs

herein expended, including its attorney's fees in such amount as may be approved by the

Court. Pursuant to CR 54.02, this is a final and appealable judgment, and there is no just

cause for the delay in the entry thereof.

Entered this 20 day of February, 2019.

THOMAS L. TRAVIS, Judge
Fayette Circuit Court, 8th Division

## CERTIFICATE OF SERVICE

This is to certify a copy of the foregoing has been mailed on

FEB 2 0 2019 to the following:

Hon. George D. Smith
Hon. Timothy R. Wiseman
Stoll Keenon Ogden, PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507
*Counsel for Plaintiff*

Hon. Philip C. Lawson
True, Guarnieri & Ayer, LLP
124 Clinton Street
Frankfort, Kentucky 40601
*Counsel for Defendants*

Hon. Thomas R. Yocum
Hon. Julie A. Neuroth
Yocum & Neuroth, LLC
1 Levee Way, Suite 3109
Newport, Kentucky 41071
*Counsel for Third-Party Defendant
Crawford*

Hon. Donald R. Todd
Hon. T. Ryan Greer
Todd & Todd, PLLC
153 Market Street
Lexington, Kentucky 40507
*Counsel for Third-Party Defendant
Martinez*

Clerk of Fayette Circuit Court

2

# EXHIBIT G

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
DIVISION VIII
CIVIL ACTION NO. 18-CI-269

| | |
|---|---|
| LEXINGTON SELECTED YEARLING SALES | CIVIL ACTION NO. 18-CI-269 |
| COMPANY, L.L.C., | |
| Plaintiff, | |
| vs. | **AFFIDAVIT OF SAM STATHIS** |
| SAM STATHIS | |
| AND | |
| CELEBRITY FARMS, L.L.C., | |
| Defendant. | |

I, SAM STATHIS, state the following under oath of perjury:

1.  I am an individual residing within the State of New York.

2.  Celebrity Farms, LLC is a New York limited liability company with its primary place of business in the State of New York.

3.  I am the non-member Manager of Celebrity Farms, LLC.

4.  Generally, these horse auctions go through hundreds of horses every single day. I believe the sale of Mettle occurred on the third or fourth day of the horse sale event. Bidders only have about 2-3 minutes between horses in the ring. Buyers (and sellers) are running around looking at horses for days before (sometimes weeks or even months before) the auction begins. Some of the final deals are made minutes before the horses get into the ring. Generally, people are standing right next to each other and making "bid" or "no bid" decisions as the horse is in the ring. All of these decisions are not documented as the lack of time doesn't permit. The closest analogy I can think of is like paper day traders in the New York Stock Exchange back in the 1980s, sans the paper.

5.    After the conclusion of the auction(s) (i.e., if multiple horses are purchased and/or sold), each buyer and seller do a final accounting (i.e., "netting") to determine the net amount due (or owing).

6.    On or about October 6, 2017, Ernie Martinez, Al Crawford and I, Sam Stathis, on behalf of and as a duly authorized agent of Celebrity Farms, LLC, agreed to participate equally in the profits and losses associated with the purchase, training, racing and sale of a horse named "Mettle."

7.    This was nobody's first rodeo. Al Crawford owns one of the largest horse stables in the United States. Ernie Martinez is known in the horse racing industry as a premier scout (i.e., an eye for winning horses) and has taken part in similar deals himself in the past. I have been in the horse racing business for more than twenty (20) years. None of the three (3) above-named individuals was a stranger to these kinds of deals.

8.    Prior to the auction of "Mettle" on or about October 6, 2017, I, Sam Stathis, on behalf of and as a duly authorized agent of Celebrity Farms, LLC, and two other individuals, Ernie Martinez ("Mr. Martinez") and Al Crawford ("Mr. Crawford"), entered into a partnership agreement ("The Partnership") to purchase "Mettle" as partners and share the purchase costs and profits equally among them so long as "Mettle" was trained by a trainer of Mr. Martinez's choosing.

9.    A material part of the inducement for Celebrity Farms to enter into the Partnership included, but was not limited to, representations and promises made by Mr. Steve Stewart, the owner of "Mettle," prior to the auction, and of course, the promise of Mr. Martinez and Mr. Crawford to make good on their end of the Partnership agreement and actually contribute their share of the purchase price for Mettle. Additionally, a material part of the inducement was having Mr. Martinez and Mr. Crawford be part of the Partnership given their experience and resources in the horse racing industry.

10.   After the Partnership was formed, but prior to the auction, the Partnership reached an agreement with Plaintiff allowing it to have 60 days after the auction to satisfy payment terms

AFFIDAVIT OF SAM STATHIS

Case 1:20-cv-03018-AT Document 1 Filed 04/14/20 Page 71 of 76
INDEX NO. EF000422-2020
RECEIVED NYSCEF: 01/16/2020

for the purchase of "Mettle." Also, the Partnership notified Plaintiff of their arrangement and the terms, that included but not limited to, that "Mettle" would be trained by a trainer of Mr. Martinez's choosing. This Agreement was affirmed by Plaintiff after auction.

11.  After the auction, I, Sam Stathis, on behalf of and as a duly authorized agent of Celebrity Farms, LLC, which was a partner of the Partnership Agreement, signed the purchase agreement with Plaintiff on behalf of the Partnership, which was approved and acknowledged by Plaintiff at time of execution, in reliance of the promises referenced above. Shortly thereafter, I took possession of "Mettle."

12.  Thereafter, and in reliance of the agreement made by the Partnership, and representations by the Plaintiff, Mr. Stewart, Mr. Martinez and Mr. Crawford, Celebrity Farms took financial measures that it otherwise would not have regarding "Mettle."

13.  Then, after Celebrity Farms took possession of "Mettle," Plaintiff falsely informed Mr. Martinez that Defendants had taken possession of "Mettle" and was having it trained by a trainer that was not selected by Mr. Martinez. Based upon this representation, which it knew or should have known was false, Mr. Martinez perceived it as a breach of the Partnership and unilaterally "no longer claims any financial responsibility for Mettle."

14.  Thereafter, Mr. Crawford took a practically identical position, unilaterally claiming that he "did not have any financial responsibility for Mettle."

15.  Prior to making the false statement referenced above, Plaintiff was aware of the Partnership Agreement, and the terms, including the term that Mr. Martinez would select the trainer.

16.  Furthermore, upon information and belief, Plaintiff knew or should have known that making this false statement would cause significant damage to the Partnership and Celebrity Farms, LLC.

17.  As indicated above, this false statement did cause the Partnership to be breached by Mr. Martinez and Mr. Crawford.

AFFIDAVIT OF SAM STATHIS

18.    Additionally, Plaintiffs conduct has caused significant damage to Defendants, including but not limited to costs associated with Mettle that Celebrity Farms, LLC has fronted with contribution from the Partnership as previously agreed upon as well as costs associated with this litigation.

19.    Plaintiff had no legal privilege or justification to make this intentional false statement.

20.    Celebrity Farms would never have entered into the Partnership Agreement, nor executed the Sales Agreement after auction, if it had known that Plaintiff would act in bad faith and that Mr. Martinez and Mr. Crawford would back out of the Partnership Agreement.

21.    It was my understanding and belief, based on the external behavior and speech of Steve Stewart and Mr. Martinez, that the two of them were close friends. Mr. Stewart and Mr. Martinez, in fact, both comfortably boasted that they do these kinds of deals all the time. The three of us (I, Mr. Stewart and Mr. Martinez) met the day before the auction and again several hours prior to Mettle's auction. Mr. Stewart confirmed to me that if I purchased Mettle or any other horse from his farm with Mr. Martinez or with other partners, he would extend Mr. Martinez sixty (60) days' credit to pay for the horse (or horses). I obviously had no reason to not trust Mr. Stewart and took him at his word. Everyone is generally a gentleman and honest with these kinds of transactions, because nobody wants a bad reputation in the industry. Word is bond. That's really what keeps everyone honest and in check.

22.    Once Mettle physically entered the ring, within seconds, no more than one minute, I, on behalf of and as a duly authorized agent of Celebrity Farms, LLC, a partner of the Partnership Agreement, signed the sales ticket on behalf of the partnership inside the sales ring hall.

23.    Mr. Manges (to my knowledge) was the sales manager and had to provide me with a "written release slip" for Mettle so that the person picking up the horse could take the horse off the sales grounds. I reminded Mr. Magnes that I purchased Mettle with Mr. Martinez and Mr. Crawford, to which he indicated that he already knew. Thereafter, Mr. Manges called Mr. Stewart to confirm the details of payment by the Partnership. Mr. Magnes did not insist on speaking with

AFFIDAVIT OF SAM STATHIS

Mr. Martinez or Mr. Crawford. After the call, Mr. Magnes did not ask for written terms, he simply gave me the release on the spot. I did not make any kind of payment at that moment, I was not asked to give any kind of deposit or make any kind of payment before Mr. Magnes released Mettle to me, Mr. Magnes did not ask for any written modification of the purchase agreement between Plaintiff and the Partnership.

24.    I manage more than five (5) active businesses, including Celebrity Farms, LLC, Polo Electric, Corp. (a unionized electrical contractor in Manhattan), the South Florida Trotting Center, Inc. (a horse stable in Florida), TheoBIM Construction Services, LLC (a layout and measurement service provider), and Victorian Valley, LLC (a rental property real estate holding company). I genuinely cannot physically be at six different places at once.

25.    When the Plaintiff informed me that Mettle was ready to pick up, I sent an experienced trainer from Celebrity Farms, LLC (who would know how to carefully handle a young horse and prevent any injury to Mettle or other people) to simply go and pick up Mettle from Kentucky to bring him to New York.

26.    I was not physically present in Kentucky the day Mettle was picked up. I don't have personal first-hand knowledge of exactly what words were exchanged between the Plaintiff's staff and Mr. Martinez. What I do know is the conversation that I had with Mr. Martinez after my staff simply picked up Mettle. Mr. Martinez was convinced and under the belief, based on a conversation he had with the Plaintiff's staff, that I would not be using Mr. Martinez's trainer for Mettle, but would instead be using one of my trainers "to train Mettle."

27.    Shortly after Mr. Martinez had communicated that he refused to have any financial responsibility towards Mettle, Mr. Crawford communicated the same (almost like a domino effect).

28.    Plaintiff's conduct described above, as well as Mr. Martinez and Mr. Crawford's breach of the Partnership Agreement, occurred within a few days of the auction. Far before the Partnership was obligated to pay the purchase price of Mettle within 60 days of auction.

PAGE 5 OF 8

AFFIDAVIT OF SAM STATHIS

29.     Despite me trying to explain that I had no intention of or in any way was insisting that any of my trainers would train Mettle, and that I had absolutely zero problem with Mr. Martinez's trainer training Mettle, Mr. Martinez was convinced otherwise. It was a complete 180, day and night, and the only thing that happened is that Mr. Martinez had a conversation with the Plaintiff's staff after my trainer simply picked up Mettle.

30.     Mr. Martinez himself explained to me that the Plaintiff's staff told him that a trainer for Sam Stathis or Celebrity Farms had come by to pick up Mettle. Unfortunately, according to Mr. Martinez, the Plaintiff's staff didn't stop there. Apparently, the Plaintiff's staff told Mr. Martinez that the trainer supposedly said that he was going to train Mettle (i.e., that Mr. Martinez's trainer would not be the one training Mettle). Not only did nobody from my staff make such a statement, not only was the Plaintiff's staff's statement false, but the Plaintiff knew exactly how sensitive and important this point was for Mr. Martinez, knew of the partnership between Mr. Martinez, Mr. Crawford and myself, and should have known the effect of the fuse they were lighting when they opened up their mouth to act upon I don't even know what thought process. Without Mr. Martinez or Mr. Crawford's equal and *pro rata* financial contributions towards the purchase price of Mettle, I would not have bid for Mettle (let alone made a bid for $180,000.00). Mr. Crawford and I are just money guys. It was Mr. Martinez who had an eye for the horses. Without Mr. Martinez, Mr. Crawford was not interested in this relationship. Mr. Stewart knew that Mr. Martinez was adamant about Mettle being trained with Mr. Martinez's trainer, and that this was extremely important in the mind of Mr. Martinez. They both had that conversation in front of me while we were all talking about the 60-day credit terms.

31.     I have offered the Plaintiff Mettle back, and the Plaintiff has refused to take Mettle back.

32.     As the Plaintiff itself points out at the outset of this lawsuit, I cast winning bids for (3) horses during the auction event: "Fool to Believe" (on behalf of Celebrity Farms, LLC), "Italian Style" (on behalf of Celebrity Farms, LLC) and "Mettle" (on behalf of the partnership between myself, Mr. Crawford and Mr. Stewart).

AFFIDAVIT OF SAM STATHIS

33. Filling out the paperwork at the end of a horse auction is more rushed than filling out the paperwork at a car dealership. The way the paperwork was presented to me, I was first handed documents relating to "Fool to Believe" and "Italian Style," and then handed paperwork related to "Mettle." I obviously cannot deny the fact that the document titled, "Acknowledgement of Purchase and Security Agreement" (Exhibit "B" to Plaintiff's Complaint) "Sam Stathis Celebrity Farm" on the line titled, "Purchaser's Name." This was obviously a mutual mistake between the parties. Plaintiff had prior knowledge of who the actual purchaser of "Mettle" was, as did the buyer. Plaintiff knew that I was signing on behalf of the Partnership, of which Celebrity Farms, LLC was a partner.

Signed on this 30th day of August , 2018.

_____
SAM STATHIS
*INDIVIDUALLY AND ON BEHALF OF*
*CELEBRITY FARMS, LLC*

STATE OF __New York__ )
                                          )ss
COUNTY OF __Suffolk__ )

SUBSCRIBED, SWORN TO AND ACKNOWLEDGED before me, a Notary Public, by Sam Stathis, individually and on behalf of Celebrity Farms, LLC, this __30__ day of __August__ , 2018.

My commission expires: __April 27, 2022__

_____
NOTARY PUBLIC



NICK KATSIFARAKIS
NOTARY
NO. 01KA6034345
QUALIFIED IN
SUFFOLK COUNTY
COMM. EXP.
PUBLIC
STATE OF NEW YORK

PAGE 7 OF 8

AFFIDAVIT OF SAM STATHIS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

PAGE 8 OF 8

AFFIDAVIT OF SAM STATHIS